# In re Varig Brazilian Airlines "Flight No. 830"

## File LOS 911430 - Los Angeles

*Decided February 18, 1997*
*Decided October 22, 1997*

## U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The reasonable diligence standard of section 273(c) of the Immigration and Nationality Act, 8 U.S.C. § 1323(c) (Supp. III 1991), is applied both to the determination of whether the passenger was an alien and to the adequacy of the carrier's examination of the passenger's documents.

(2) In a determination of reasonable diligence under section 273(c) of the Act, the carrier must demonstrate by a preponderance of the evidence that it has established, and its staff has complied with, procedures to ensure that all of its passengers' travel documents have been inspected prior to boarding so that only those with valid passports and visas are permitted to board.

(3) Where a document is altered, counterfeit, or expired, or where a passenger is an imposter, to the extent that a reasonable person should be able to identify the deficiency, a carrier is required to refuse boarding as a matter of reasonable diligence.

(4) In denying reconsideration, the Board of Immigration Appeals reaffirms its decision that, in fine proceedings, the reasonable diligence standard is applied both to the determination of whether a passenger is an alien and to the adequacy of the carrier's examination of the passenger's documents.

FOR CARRIER: Constance O'Keefe, Esquire, Washington, D.C.

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: David M. Dixon, Chief Appellate Counsel

## BEFORE THE BOARD
(February 18, 1997)

BEFORE: Board Panel: HOLMES, HURWITZ, and VILLAGELIU, Board Members.

HURWITZ, Board Member:

In a decision dated December 10, 1991, the director of the National Fines Office ("director") imposed administrative fines totaling $3,000 for one violation of section 273(a) of the Immigration and Nationality Act, 8 U.S.C.

§ 1323(a) (Supp. III 1991), and denied a request from the carrier for remission of the fine. The carrier has appealed. The appeal will be sustained.

## I. BACKGROUND

The carrier brought a passenger to the United States from Brazil on September 3, 1991. On September 11, 1991, the director issued a Notice of Intention to Fine Under Immigration and Nationality Act (Form I-79), in which he alleged that the carrier violated section 273 of the Act by bringing the alien passenger to the United States without a visa, and therefore that the carrier is liable for an administrative fine in the amount of $3,000.

In a response dated November 27, 1991, the carrier requested remission of the fine pursuant to section 273(c) of the Act. According to the carrier, the alien involved arrived in Los Angeles on Flight RG830 on September 3, 1991. The alien initially boarded a flight from Lagos, Nigeria, on September 2, 1991. His ticket reflects a final destination of Los Angeles with a connecting flight in Rio de Janeiro and a return flight with an open date from Los Angeles to Rio de Janiero. The carrier claims that upon boarding the flight in Rio de Janiero, the alien presented a Dutch passport reflecting birth in Nairobi, Kenya. The carrier further claims that, based on the alien's presentation of a Dutch passport and his possession of a round trip ticket, its agents believed that the alien satisfied the requirements for the Visa Waiver Pilot Program under section 217 of the Act, 8 U.S.C. § 1187 (Supp. III 1991), and gave the alien a Form I-791 (Visa Waiver Pilot Program Information Form) to complete and sign. The carrier further asserts that as a further precaution the Flight 830 purser held the alien's passport during the flight. The carrier states that when the flight arrived in Los Angeles, its agent discovered that the alien had not signed the Form I-791. When the alien continued to refuse to sign the Form I-791, the carrier's agent presented the documents unsigned to the Immigration and Naturalization Service, and the alien applied for admission on this basis. Upon careful inspection by the Service officer, it was determined that the passport was counterfeit.

A copy of some pages of the alien's Dutch passport, his ticket, and the unsigned Form I-791 are included in the record. The alien's ticket reflects that it is annotated with the passport number from the Dutch passport. The record also contains what the carrier describes as a telex, apparently from its agent involved in this incident in Los Angeles. This telex states that both the agent and the Service inspector tried to explain the meaning of the form, but that the alien was reluctant to sign due to the preclusion stated in the document against the performance of skilled or unskilled labor and the alien's mistaken belief that such would prevent his business activities in Los Angeles. The Airport Fines Detection Record (Form NFO-1) reflects that the passenger refused to sign the Form I-791.

In its request for remission the carrier asserted that it could not know by the exercise of reasonable diligence that the alien would refuse to sign the

Form I-791 or that the passport was counterfeit. Concerning its first claim, the carrier maintains that, under the regulation in effect at that time, the carrier was not under an obligation to have the alien complete and sign the Form I-791 prior to boarding. Regarding its second claim, the carrier asserts that its agents are trained to detect false passports but cannot be held to the level of expertise possessed by the Service.

In a decision dated December 10, 1991, the director denied the carrier's request for remission under section 273(c) of the Act. The director acknowledged that the record reflects that the alien refused to sign the Form I-791. The director stated in his decision that "the sole issue to be decided is whether the carrier did exercise reasonable diligence in determining the alienage and visa requirements for this alien passenger prior to departure from the last foreign port outside the United States." He concluded that the carrier "has failed to provide sufficient evidence to support such a finding."

## II.  SECTION 273 OF THE ACT

Section 273(a) of the Act provides that it shall be unlawful for any person "to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have a valid passport and an unexpired visa, if a visa was required under this Act or regulations issued thereunder." Under section 273(a) of the Act the carrier who brings aliens to the United States becomes, in effect, an insurer that the aliens have met the visa requirements of the Act. *Matter of Scandinavian Airlines Flight #SK 911*, 20 I&N Dec. 306 (BIA 1991). Any bringing to the United States of an alien who does not meet those requirements incurs fine liability. *Matter of M/V "Emma"*, 18 I&N Dec. 40 (BIA 1981).

Section 273(c) of the Act provides that a fine under section 273(a) of the Act "shall not be remitted or refunded, unless it appears to the satisfaction of the Attorney General that such person, and the owner, master, commanding officer, agent, charterer, and consignee of the vessel or aircraft, prior to the departure of the vessel or aircraft from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a valid passport or visa was required." What constitutes "reasonable diligence" varies according to the circumstances of the case. *Matter of S.S. "Florida"*, 3 I&N Dec. 111 (BIA 1947; A.G. 1948).

## III.  ISSUES PRESENTED

On appeal the carrier asserts that it exercised reasonable diligence. It notes that the alien's ticket was annotated with the number of the Dutch passport that the alien used in boarding the plane and maintains that its agents therefore verified the alien's documents to ensure that he was a Dutch citizen. The

carrier contends that it could not have discovered by reasonable diligence that such passport was fraudulent.

It further asserts that the alien appeared to meet the requirements for the Visa Waiver Pilot Program and that its employees acted properly in boarding the alien under that program. In this regard, the carrier cites the requirements in 8 C.F.R. § 217.6 (1991) and maintains that its conduct satisfied those requirements. In particular, the carrier asserts that these regulations in effect at the time of the incident in question provided that such program was available to an alien who was a national of one of the countries specified in the regulations and was in possession of a valid passport issued by such country; who was in possession of a completed and signed Form I-791 prior to inspection; who sought admission to the United States for 90 days or less; who was in possession of round trip, nontransferable passage valid for 1 year; who agreed that the return portion of such passage may be used to effect removal from the United States based upon a finding of excludability or deportability; and who appeared otherwise admissible. The carrier asserts that the alien in this case satisfied these requirements and thus was properly boarded by its agents. The carrier further states that it had no obligation to require that the alien sign the Form I-791 prior to boarding, as the regulation in effect at the time required only that it ensure that the Form I-791 was completed and signed by the alien prior to inspection. 8 C.F.R. § 217.6(b)(2)(vi). On these facts the carrier contends that it exercised reasonable diligence.

For its part, the Service maintains on appeal that the standard of reasonable diligence is relevant only to the determination of whether the passenger is an alien and whether an entry document was required. Thus, the Service asserts that, once the carrier determines that the passenger is an alien who needs a visa or other entry document, it is absolutely liable if such passenger is without a valid visa. In support of its interpretation the Service cites *Matter of S.S. "Florida", supra*, where it was held that the carrier was not liable, as the carrier, despite reasonable diligence, incorrectly believed that the alien was a United States citizen. The Service acknowledges that in other Board decisions such as *Matter of Swissair "Flight #164"*, 15 I&N Dec. 111 (BIA 1974); *Matter of M/V "Emma", supra*; and *Matter of Scandinavian Airlines "Flight #SK 911", supra*, the Board discussed the reasonable diligence requirement in cases not involving a question of the carrier's belief that the alien was a United States citizen. The Service maintains, however, that this discussion was dicta, as reasonable diligence was found not to be present.

Finally the Service argues that its interpretation is correct, as Congress recently enacted section 273(e) of the Act, which provides for mitigation of fines imposed under section 273 of the Act.[1] The Service contends that

---

[1] Section 273(e) provides:

A fine under this section may be reduced, refunded, or waived under such regulations as the Attorney General shall prescribe in cases in which–

section 273(c) of the Act would be superfluous in light of section 273(e) under the carrier's interpretation. It maintains that such enactment of section 273(e) of the Act supports its interpretation that section 273(c) was not sufficient to ameliorate the harsh effect of section 273(a), as section 273(c) is available only in the narrow circumstance found in *Matter of S.S. "Florida", supra,* where a reasonable basis exists that the passenger was a United States citizen.

## IV. DISCUSSION

In the present case, we find that the record clearly establishes that the passenger here was an alien who needed a valid visa to enter the United States and was not in possession of one. The record reflects that the alien possessed a fraudulent Dutch passport and no document to enter this country. The carrier has therefore violated section 273(a) of the Act.

We also find that our inquiry does not end there, however, as we reject the Service interpretation that section 273(c) of the Act has no applicability once it is established that the passenger is an alien who needs a visa or other entry document. As an initial matter, we note that the Service has set forth this argument for the first time on appeal, and it was not the basis for the director's decision presently on appeal to the Board. The record shows that in his decision the director applied the reasonable diligence standard to not only the carrier's actions in determining if the passenger was an alien, but also to its review of the adequacy of the alien's documents. Our role is to review for adequacy and legal correctness the director's December 10, 1991, decision, not an after-the-fact rationale. However, we will address the Service's argument in this case because it presents a legal issue of substantial significance and is based in part on the legal effect of a statute, section 273(e) of the Act, which was not in existence at the time of the director's original decision.

Initially we note that over the years section 273(c) of the Act has been interpreted as applying the reasonable diligence standard to both the determination of whether the passenger was an alien, as well as the adequacy of the carrier's examination of the passenger's documents. Our review of the cases cited by the Service interpreting section 273(c) of the Act over the years reveals that none of these cases links strict liability and remission. Rather, the cases have consistently held that determinations of whether carriers meet the reasonable diligence standard, and are thus eligible for remission or refund of

---

(1) the carrier demonstrates that it had screened all passengers on the vessel or aircraft in accordance with procedures prescribed by the Attorney General, or

(2) circumstances exist that the Attorney General determines would justify such reduction, refund, or waiver.

Subsection (e) was added by section 209(a)(6) of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, 4312 (enacted Oct. 25, 1994).

fines, are to be made on a case-by-case basis. Each holds that reasonable diligence, and thus eligibility for remission of fines, is to be determined on the basis of the carrier's actions at the last boarding station. These cases do not base judgments of reasonable diligence, without more, on whether or not the passengers had the proper documents in their possession upon arrival in the United States. In the most recent case, *Matter of Scandinavian Airlines "Flight #SK 911", supra,* the Board discussed the applicability of section 273(c) of the Act, but concluded that remission was not warranted, as reasonable diligence had not been shown by the carrier. This conclusion is consistent with precedent and reaffirms our holdings over the years that, under the appropriate facts, remission is available, even in cases not involving a claim to United States citizenship by a passenger. We note that in his decision dated December 12, 1991, the director relied on this precedent and clearly applied the reasonable diligence standard "in determining the alienage and visa requirements for this alien passenger."

We also reject the Service argument that enactment of section 273(e) of the Act supports its interpretation. In this regard we note that section 273(e) of the Act deals not only with remission of the fine, but also with reduction of the fine, which is different from remission. We further note that under section 273(c) of the Act the focus is on whether the carrier acted with reasonable diligence. Under section 273(e) of the Act the focus is on whether the carrier can demonstrate that it screened all passengers on the vessel or aircraft in accordance with procedures established by the Attorney General, or that circumstances exist that the Attorney General determines would justify such reduction, refund, or waiver. *See* 61 Fed. Reg. 29,323 (1996) (to be codified at 8 C.F.R. § 273) (proposed June 10, 1996).

On appeal the carrier asserts that it has demonstrated reasonable diligence in its boarding of the passenger for whom it has been assessed a fine. We find that, in a determination of reasonable diligence under section 273(c) of the Act, the carrier must show that it has established adequate procedures to ensure that all of its passengers' travel documents have been inspected prior to boarding so that only those with valid passports and visas are permitted to board. The procedures established by the carrier to satisfy this obligation must be consistent with the applicable statutes and regulations. Where a document is altered, counterfeit, or expired, or where a passenger is an impostor, to the extent that a reasonable person should be able to identify the deficiency, a carrier is required to refuse boarding as a matter of reasonable diligence.

We further find that, before remission will be granted, the carrier must also demonstrate that the procedures established have been carefully and accurately executed by the carrier's staff.

Finally, we find that the carrier must demonstrate by a preponderance of the evidence that it has complied with these above-stated requirements.

In the present case, we find that the carrier has established it exercised reasonable diligence in its handling of the alien. The record reflects that the

passenger presented a Dutch passport and that such passport relates to the alien in this case. The record also shows that the carrier's agents inspected that passport before allowing the alien to board, as the alien's ticket shows that it is annotated with the passport number. The fact that the passport was fraudulent does not, in this case, present an obstacle to remission. The evidence submitted shows that the passport appears legitimate. Most significantly, upon the alien's arrival the Service inspector at first attempted to convince him to sign the Form I-791, an unlikely circumstance if the passport were obviously fraudulent.[2] In this case, we find that the record establishes that after reasonable investigation, the carrier had reasonable grounds to believe the document was true and in fact did so believe.

We further find that the carrier acted with reasonable diligence in fulfilling its requirements under the Visa Waiver Pilot Program. At the outset we find that the relevant regulatory provision is not, as the Service claims, 8 C.F.R. § 217.2, which relates to eligibility of aliens for such program. Rather, the relevant provision is 8 C.F.R. § 217.6, which involves the carrier's obligations under this program.

Concerning these requirements, the only one which the Service maintains was not satisfied in this case involves the requirement that the alien be in possession of a completed and signed Form I-791 at time of inspection. On this issue, the Service maintains that for reasonable diligence to be established, the carrier must have the alien complete and sign the Form I-791 prior to boarding. We reject this interpretation. In this regard we note that a proposed revision to 8 C.F.R. § 217.6 was drafted, which required that carriers ensure that the Visa Waiver Pilot Program Information Form be completed and signed by the alien prior to boarding the aircraft. 56 Fed. Reg. 21,102 (1991) (to have been codified at 8 C.F.R. § 217.6(b)(2)(vi)) (proposed May 7, 1991). When the final rule was published in 56 Fed. Reg. 32,952 (July 18, 1991), 8 C.F.R § 217.6(b)(2)(vi) stated that the carrier agrees to "ensure that the [Form I-791] is completed and signed by the alien prior to inspection." Insofar as the Service itself rejected the proposal that such form be signed and completed prior to boarding, we are not willing to hold the carrier to such standard for purposes of reasonable diligence.

In our consideration of whether the carrier acted with reasonable diligence in its obligations under the Visa Waiver Pilot Program, we find that it has done so. The record reflects that the alien was provided the Form I-791 at time of boarding and that he had completed, but not signed, such form by the time he was presented for inspection. The record further shows that he was unwilling to sign the form on account of his belief that, because he claimed to

---

[2] We note that under the theory of strict liability advanced by the Service on appeal, even if the alien passenger had signed the Form I-791 and had been admitted with a passport that passed Service scrutiny during inspection, the carrier would still be liable for a fine if at some subsequent point a documents examiner recognized the passport as a skillful fraud.

be a business visitor, he would be precluded from fulfilling the purpose of his visit if he signed the form, which prohibited the performance of skilled or unskilled labor. The record reflects that the carrier's agent tried to explain that the signing of the form was no impediment. The record also reflects that Service personnel also tried unsuccessfully to have the alien sign the Form I-791. Although we recognize that the term "ensure" is not anywhere defined in the regulation, we find that in the circumstances here, where the form was completed by the alien by the time of inspection but not signed due to the alien's reluctance regarding one issue, the carrier has met its burden.

    **ORDER:**    The appeal is sustained and the fine is remitted.

## BEFORE THE BOARD
### (October 22, 1997)

FOR CARRIER: Constance O'Keefe, Esquire, Washington, D.C.

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Scott M. Rosen, Appellate Counsel

BEFORE: Board Panel: HOLMES, HURWITZ, and VILLAGELIU, Board Members.

HURWITZ, Board Member:

The Immigration and Naturalization Service has timely moved for reconsideration of our decision on February 18, 1997, in *Matter of Varig Brazilian Airlines "Flight No. 830"*, 21 I&N Dec. 744 (BIA 1997). The motion will be denied.

In our prior decision, we granted remission of a fine under section 273(c) of the Immigration and Nationality Act, 8 U.S.C. § 1323(c) (Supp. III 1991), to a carrier that brought to the United States a passenger who presented a fraudulent passport in an attempt to gain admission to this country. In so holding, we rejected the Service's argument that the reasonable diligence standard of section 273(c) of the Act is relevant only in ascertaining whether a passenger is an alien who is required to have a visa or other entry document. The Service asserted that once the carrier ascertains that a passenger is an alien, the carrier is strictly liable for the fine if the alien does not have a valid entry document. We held, however, that the reasonable diligence standard of section 273(c) of the Act is applied both to the determination of whether the passenger was an alien and to the adequacy of the carrier's examination of the passenger's documents. We also rejected the Service's argument that enactment of section 273(e) of the Act, which provides for reduction, refunding, or waiving of a fine, supports its contention regarding the limited applicability of section 273(c) of the Act.

In its motion the Service again maintains that the reasonable diligence standard of section 273(c) of the Act is relevant only to the determination of

whether the passenger is an alien who needs a visa or other entry document, and does not concern the adequacy of the carrier's procedures regarding examination of the passenger's documents. It reiterates that the discussion of reasonable diligence relating to the adequacy of the carrier's inspection procedures of passengers' documents in cases such as *Matter of Scandinavian Airlines Flight #SK 911,* 20 I&N Dec. 306 (BIA 1991); *Matter of "M/V Emma"*, 18 I&N Dec. 40 (BIA 1981); and *Matter of SwissAirlines "Flight #164"*, 15 I&N Dec. 111 (BIA 1974), was incorrect dicta.

In our review we find that the Service has only reiterated its arguments on this issue and that these arguments were previously considered and rejected in *Matter of Varig Brazilian Airlines "Flight No. 830", supra*. In that decision we surveyed the relevant case law to arrive at our holding. The discussion of reasonable diligence in those cases regarding the carrier's examination of passengers' documents is not mere dicta. These cases presented a lengthy analysis of that issue, although they concluded that the carriers in those cases had not met their burden. If, in those cases, the carrier was not eligible for remission, as the Service contends, such detailed discussion would, in fact, be superfluous. We are unwilling to find that on numerous occasions the parties would have needlessly addressed an issue that was not pertinent and that on multiple occasions the Board would have unnecessarily examined an irrelevant issue. We also note that even on reconsideration the Service has presented no evidence that the interpretation of law it advances in the motion was ever its interpretation in the past, and, indeed, such interpretation was not the basis on which its National Fines Office adjudicated this case.

The Service also contends that our interpretation violates the plain meaning of the statute, but it has not provided support, such as legislative history, that its interpretation of the "plain meaning" is correct. On this issue the Service has cited only generalized principles of statutory construction which are not enlightening in this determination.

In its motion the Service also maintains that the recent enactment of section 273(e) of the Act supports its interpretation of section 273(c). The Service concedes that the Board, in its original February 18, 1997, decision, considered these same arguments and found them to be without merit. We again reject them. Specifically, the Service claims that under the Board's interpretation of section 273(c) of the Act, section 273(e) is superfluous. We cannot accept such a claim. It certainly can be imagined that cases may arise which do not satisfy the reasonable diligence standard of section 273(c) but may require a reduction of the fine because the carrier may have complied with some of the screening procedures prescribed by the Attorney General, or the Attorney General may find that circumstances exist which would justify a reduction of the fine.

In our review we find nothing in our February 8, 1997, decision which is inconsistent with our prior published holdings. Indeed, we find that such

prior precedent decisions articulated the principle that the reasonable diligence standard is applied both to the determination of whether the passenger was an alien and to the adequacy of the carrier's examination of the passenger's documents. We find that the Service's present motion has not set forth any errors in fact or law concerning our previous ruling in this case, nor has the Service pointed out anything that has been overlooked. Accordingly, we shall deny the motion.

**ORDER:**     The motion is denied.