**THE PENINSULAR & OCCIDENTAL STEAMSHIP COMPANY and United States Fidelity and Guaranty Company, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16435.**

United States Court of Appeals Fifth Circuit.

April 3, 1957.

Harold B. Wahl, Jacksonville, Fla., Loftin & Wahl, Jacksonville, Fla., for appellants.

Richard R. Booth, Asst. U. S. Atty., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

On stipulated facts the District Court held that the Steamship Company was liable for the statutory penalty of $1,000 imposed under Section 273 of the Immigration and Nationality Act [1] of 1952 for having brought to the United States four aliens not then in possession of valid, regular unexpired visas [2] even though by joint administrative decision of the Department of State and Immigration authorities, each alien was lawfully admitted under a waiver [3] of visa requirements after entry.

Acquiescing now in the finding of the Board of Immigration Appeals, approved expressly by the District Court, that the Steamship Company had failed to estab-

---

1. Section 273, 8 U.S.C.A. § 1323:

"(a) It shall be unlawful for any person, including any transportation company, * * * to bring to the United States from any place outside thereof * * * any alien who does not have an unexpired visa, if a visa was required under this chapter or regulations issued thereunder.

"(b) If it appears to the satisfaction of the Attorney General that any alien has been so brought, such * * * transportation company, * * * shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien so brought and, except in the case of any such alien who is admitted, or permitted to land temporarily, in addition, a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, such latter sum to be delivered by the collector of customs to the alien on whose account the assessment is made. * * *

"(c) Such sums shall not be remitted or refunded, unless it appears to the satisfaction of the Attorney General that such person, and the owner, master, commanding officer, agent, charterer, and consignee of the vessel or aircraft, prior to the departure of the vessel or aircraft from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien and that a visa was required."

2. Section 212, 8 U.S.C.A. § 1182, after the prefatory provision:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:"
then lists the aliens in 31 categories running the gamut from feeble-minded to communists. The nonimmigrant aliens here involved come under category 212 (a) (26), 8 U.S.C.A. § 1182(a) (26):

"(26) Any nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months * * *; and (B) at the time of application for admission a valid nonimmigrant visa or border crossing identification card;"

3. Section 212(d) (4), 8 U.S.C.A. § 1182 (d) (4):

"Either or both of the requirements of paragraph (26) of subsection (a) of this section may be waived by the Attorney General and the Secretary of State acting jointly (A) on the basis of unforeseen emergency in individual cases, or (B) on the basis of reciprocity with respect to nationals of foreign contiguous territory or of adjacent islands and residents thereof having a common nationality with such nationals, or (C) in the case of aliens proceeding in immediate and continuous transit through the United States under contracts authorized in section 1228(d) of this title."

lish that it "* * * did not know, and could not have ascertained by the exercise of reasonable diligence * * *," § 273(c), that the aliens involved were not in possession of valid unexpired visas, the whole attack is concentrated in the claim that, regardless of diligence or the lack of it, or the nature of defects in a purported visa, or the complete absence of one, the statute imposes no fine if the visa is waived.

The argument, neatly and cleverly put, a meld of Section 273 and 212 runs like this: (a) the penalty is incurred only when an alien is required to have a visa; (b) the only time a visa is required is "upon application for admission"; (c) if administratively the visa is waived, it means that as of the only pertinent time of "application for admission" none was needed, hence none was ever required.

But once stated it exhausts itself and fails because of an overreliance on the word "required" as meaning the conditions under which a particular alien is finally allowed to enter. In text and context it is plain that Congress meant for the term to describe those classes of persons who must have a passport and unexpired visa as a condition to entry. If a person coming within any one of such classes is brought to the United States, it is incumbent upon the carrier, at least insofar as what it knows and could have ascertained through the exercise of reasonable diligence, to make certain that such alien has an unexpired visa. And if any such person within any such class is brought to the United States without an unexpired visa, the penalty is incurred.

Fines and administrative penalties against transportation companies have long been a part of the structure of immigration laws. Frequently severe and occasionally harsh in specific application, they effectuate a policy of imposing on carriers initial determination of many specific matters relating to eligibility of aliens for entry. Relief from hardship is, as in Section 273(c), frequently afforded through administrative remission or mitigation of penalties. But the requirement that carriers shall use reasonable diligence to make certain that all persons within the specified classes have unexpired visas would be lessened, and the Congressional policy against such persons coming here without visas undermined, if the sanction of the penalty evaporated merely because an individual alien might be given a waiver.

Because of extensive changes in terms and structure in the 1952 Immigration and Nationality Act, little specific aid comes from cases under prior laws. But what there is reflects a similar Congressional purpose, effectuated in the decisions, to compel carriers, under the pain of penalties which increase vigilance, to police enforcement of and compliance with many parts of the immigration laws. Hamburg-American Line v. United States, 291 U.S. 420, 54 S.Ct. 491, 78 L.Ed. 887, 1934 AMC 382; cf. Lamport & Holt v. Elting, 2 Cir., 74 F.2d 238, 1935 AMC 51; and Navigazione Generale Italiana v. Elting, 2 Cir., 74 F.2d 241, 1935 AMC 444, certiorari denied 296 U.S. 603, 56 S.Ct. 119, 80 L.Ed. 427, 1935 AMC 1443.

And intrinsically, the 1952 Act which included for the first time nonimmigrant aliens contains terms indicating quite persuasively that Congress carefully distinguished between penalties against the carrier and the ultimate admission of the aliens. In Section 273(b), note 1, *supra,* the $1,000 penalty plus a "sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival * * *" is imposed. But the repayment to the alien of transportation charges is expressly excepted "in the case of any * * * alien who is admitted, or permitted to land temporarily." The section imposing transportation costs "in addition" to the penalty where the alien is not admitted argues strongly that Congress intended the penalty to be incurred even though, by diplomatic approaches or administrative proceedings, the alien might be allowed ultimately to enter.

On the record made and the issues thus presented, the judgment of the District Court for the penalties was right.[4]

Affirmed.

4. The Steamship Company argues that the asserted current practice of the Immigration authorities to treat blanket general waivers under *subsection* (B) of § 212 (d) (4), note 3, supra, effective "nunc pro tunc" as of the time of application so that no visa is "required" and no penalty incurred is inconsistent with the Government's contention here. If inconsistent, that could not repeal or amend Congressional action, and in any case, the carrier would automatically meet the requirements for administrative relief under Section 273(c), note 1, supra.