MATTER OF AIRCRAFT "VT-DJK"

In Fine Proceedings

NYC-10/52.1087 ·

*Decided by Board June 22, 1967*

Liability to fine lies under section 273(b) of the Immigration and Nationality Act for bringing an alien passenger without a visa in violation of section 273(a) of the Act notwithstanding the carrier (signatory to an agreement pursuant to section 238(d) of the Act) alleges the passenger was "in transit" when, in fact, he was presented for inspection as a nonimmigrant visitor for business.

BASIS FOR FINE: Act of 1952—Section 273(a) [8 U.S.C. 1323].

IN RE: Air-India Aircraft "VT-DJK" (Flight #105), which arrived at the port of New York from foreign on August 31, 1966. Alien passenger involved: John Ashlyn.

<table>
<tr><td>ON BEHALF OF APPELLANT:<br>Stephen L. Gelband, Esquire<br>Fisher, Sharlitt & Gelband<br>Suite 1000<br>1522 "K" Street, N.W.<br>Washington, D.C. 20005<br>(Oral argument)</td><td>ON BEHALF OF SERVICE:<br>Irving A. Appleman<br>Appellate Trial Attorney<br>(Oral argument)</td></tr>
</table>

James E. Landry, Vice Pres.
        and
James R. Gorson, Director
Air Transport Association of
    America
1000 Connecticut Avenue, N.W.
Washington, D.C. 20036
(Amicus Curiae brief filed;
   also present oral argument)

The District Director at New York, finding no justification whatsoever for remission thereof, has ordered an administrative penalty of $1,000 imposed on Air-India, as owners, agents, charterers, or consignees of the above-described aircraft, for bringing to the United States from a place outside thereof, other than foreign contiguous

821-654—69——19

territory, the above-named alien passenger who was not in possession of an unexpired visa and was not exempt from the presentation of same by the statute or the regulations promulgated pursuant thereto. The appeal from said official's decision, which brings the case before this Board for consideration, will be dismissed.

The person named above, a citizen of Great Britain arrived in the United States as a passenger at the time, place, and in the manner described above. He applied for admission as a nonimmigrant temporary visitor for business. He presented a valid British passport, but he was not in possession of an unexpired visa authorizing his admission to the United States. He was paroled into the United States to accomplish the purpose of his visit, upon the condition that his departure from this country be effected on or before September 15, 1966. Apparently, this condition was met.

It is no defense to imposition of this fine that the carrier was signatory to an Agreement (Form I-426) entered into between it and the Commissioner, pursuant to section 238(d) of the Immigration and Nationality Act (8 U.S.C. 1228) whereby, in consideration of a waiver of visa requirements, the carrier guarantees the passage through the United States in immediate continuous transit of aliens destined for foreign countries. The reason is that the carrier did not present the alien passenger for inspection as being brought within the terms of the Agreement. Instead, he was presented for inspection as a nonimmigrant temporary visitor for business. The Form I-94 executed and presented for him did not list him as being brought within the Agreement. Accordingly, the purpose of the Agreement, to wit, to expedite inspection both for the benefit of the carrier and the Government, was defeated. In other words, when the carrier failed to show that the passenger was being brought within the Agreement, said Agreement was not effective. In any event, in this connection, the alien passenger did not have confirmed reservations to any point beyond the United States, as required by 8 CFR 214.2(c) and paragraph (1) of the Agreement.

In connection with the foregoing, it is of no assistance to the carrier that it agreed with the passenger, prior to his embarkation in London, that in the event the Service should refuse to admit him upon arrival at New York, he would then be presented as an "in-transit" passenger and returned to London. The manifest intention of the Congress, as appears from the plain language of the statute, was to subject carriers to a penalty for taking on board and bringing to the United States aliens not in possession of the required documents. If the carrier were to escape such penalty because of developments subsequent to arrival in the United States and exclusion of the alien passenger, the carrier

would be in a position of being permitted to speculate upon the administration and enforcement of the law. This, obviously, is not within the contemplation of the statute. Hence, when a carrier takes on board and brings a nonimmigrant to the United States who is not in possession of the documents required by the law and regulations, it has thereby incurred the administrative penalty specified in the statute.

The only conditions under which the penalty may not be imposed are stated in subsection (c) of section 273. It provides that a carrier is exempt from a fine if, prior to the departure of the aircraft from the last port outside of the United States, it did not know and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien who required a visa. This aspect of the case will be discussed at the conclusion of this opinion.

The foregoing moots the question, raised by the appellant, in the amicus curiae brief, and by the District Director, of whether aliens proceeding from Europe to the United States and back to Europe may properly be considered as "in-transit" within the terms of the Agreement. It also adequately answers the carrier's contention that it was advised by an immigration officer on duty at the time of the alien passenger's arrival in the United States that it would not be prejudiced for bringing him here without a visa. The reason, again, is that liability to the fine had already been incurred.

The carrier's situation in this respect is not altered by the fact that the alien passenger was paroled into this country to accomplish the purpose of his trip. That is because the passenger's parole did not constitute his "admission" into the United States. In the eyes of the law, after the parole he stood at the threshold of this country seeking admission (*Leng May Ma* v. *Barber*, 357 U.S. 185). Thus, the action of the Service in paroling the alien passenger had no bearing whatsoever upon the question of the carrier's liability to the fine for bringing him to this country from foreign without proper documents, or upon the question of remission thereof.

It is of no assistance to the carrier that the alien passenger told its representative abroad that he would not remain in the United States for the reason that he would be able to transact his business at the airport. As hereinbefore indicated, the alien was not entitled to be presented as an in-transit alien, and he was not so presented. The fact that he only intended to remain in the United States for a brief period of time is immaterial.

We find it to be of no consequence here that, in order to reduce this country's balance-of-payments deficit, and to aid foreign travelers desiring to spend brief periods in the United States en route to "Expo 67" in Canada or the up-coming Olympic games in Mexico,

the regulations have been changed so that an "in-transit" alien may remain in the United States for a period up to ten days instead of having to depart from this country on the first available transportation onward to his destination. The requirements under which such aliens may be brought to the United States, *ante*, have not been changed. Since those requirements were not met in this instance, further discussion of this aspect of the case is unnecessary. Accordingly, and in view of the foregoing, we conclude that liability to the fine has been established.

We likewise find herein no basis for remitting this fine, on the theory that the carrier did not know and could not have ascertained by the exercise of reasonable diligence that the passenger, who has known to be an alien insofar as the United States is concerned, required but lacked a visa. The record clearly reflects that the carrier knew that the alien passenger did not have a visa, but nevertheless embarked him for transportation to the United States. It did not present him for inspection as an alien being brought within the Agreement, or in any way indicate that he was being transported within the terms thereof. Actually, the carrier's claim that the fine should be remitted herein depends upon the assertion that the alien passenger had to proceed urgently from London to New York at such short notice that he had no time to obtain a visa. Unfortunately for the carrier, however, action on its part based on considerations of expediency peculiarly personal to the passenger does not constitute the due diligence contemplated by the statute.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.