## MATTER OF SWISSAIR "FLIGHT #164"

### In Fine Proceedings

### BOS-10/11.284

*Decided by Board September 24, 1974*

(1) Liability to fine lies under section 273(a) of the Immigration and Nationality Act, where the airline brought the alien into the United States without the required visa. Notwithstanding the fact that the carrier was under great pressure to arrange alternative routing, due to bad weather, it could not dispense with the proper inspection procedures prior to emplaning the involved alien.

(2) The official Service record (Form I-160) prepared by the immigrant inspector, regarding his first hand knowledge of the facts concerning the alien's arrival, examination of her passport, and the lack of the required visa, was admissible in these administrative proceedings.

IN RE: SWISSAIR AIRLINES AIRCRAFT "Flight #164" which arrived at the Boston, Massachusetts airport, from Geneva, Switzerland, on November 6, 1972. Alien passenger involved: Marguerite Mutti.

BASIS FOR FINE: Act of 1952—Section 273(a) [8 U.S.C. 1323(a)].

ON BEHALF OF CARRIER:
Steven R. Schlam, Esquire
Freeman and Kra
335 Broadway
New York, New York 10013

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

In a decision dated January 23, 1973, the district director in Boston imposed a fine of $1,000 upon the carrier Swissair for violation of section 273(a) of the Immigration and Nationality Act, and he denied Swissair's request for remission of the fine. The carrier has appealed from that decision. The appeal will be dismissed.

The record shows that on November 6, 1972, Marguerite Mutti, an alien who is a native and citizen of Switzerland, was brought by the carrier to Boston, Massachusetts from Geneva, Switzerland. Her eventual destination was Montreal, Canada. She was neither in possession of an unexpired visa nor was she exempt from the presentation of one. She told the immigrant inspector that no representative of Swissair had examined her passport before she boarded the plane. She was paroled into the United States for transit to Canada and departed the same day.

Passenger Mutti was originally scheduled to fly from Geneva to

Zurich and from there directly to Montreal. However, bad weather forced the cancellation of the Zurich to Montreal flight and resulted in the rerouting of the alien through Boston. According to affidavits submitted by the carrier, many of its passengers were stranded at the Geneva airport on the day in question, and there was great pressure on the carrier's employees to arrange alternative routings. The affidavits state that the carrier's employees did not *intentionally* allow the alien to board without a visa.

Section 273(a) of the Act states that it shall be unlawful for any transportation company "to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have an unexpired visa, if a visa was required under this Act or the regulations issued thereunder." Section 273(b) provides that the fine for each violation of subsection (a) shall be $1,000.

Counsel has advanced several arguments questioning the constitutionality of section 273 of the Act. As he has conceded, however, we have no authority to pass upon the constitutionality of the statutes which we administer. *Matter of L—*, 4, I. & N. Dec. 556 (BIA 1951); *Matter of Santana*, 13 I. & N. Dec. 362 (BIA 1969).

Counsel also claims that the carrier did not "bring" the alien passenger to the United States within the meaning of section 273(a) of the Act because there was no "intent to leave" her here. This proposition was rejected by the United States Supreme Court in *Osaka Shosen Kaisha Line* v. *United States*, 300 U.S. 98 (1937).

Counsel has emphasized that the alien was paroled into the United States and was allowed to continue her journey, and that she was present in the United States for only a few hours. We have held, however, that the action of the Service in paroling an alien passenger into the United States, and permitting him to accomplish the purpose for which he came, has no bearing whatsoever upon the carrier's liability for bringing him to the United States from foreign territory without the proper documentation. *Matter of Aircraft "VT-DJK,"* 12 I. & N. Dec. 267 (BIA 1967); *Matter of Plane "F-BHSQ,"* 9 I. & N. Dec. 595 (BIA 1962).

Counsel has challenged the evidence upon which the district director based the decision to impose a fine. The evidence that the alien arrived without the required visa is contained in a Notice of Parole, Form I-160, prepared by an immigrant inspector at the time of the alien's arrival in the United States. Counsel claims that this evidence is insufficient to support the imposition of the fine because (1) the alien's passport (or a copy of it) showing the lack of the proper visa was not made a part of the record, (2) the information in Form I-160 is hearsay, and (3) the carrier had no opportunity to cross-examine the immigrant inspector who prepared the Form I-160.

112

The contention that due process in fine proceedings requires that the Government include the alien's passport, or a copy thereof, in the record was rejected in *Cunard S.S. Co.* v. *Elting*, 97 F.2d 373, 376–77 (C.A. 2, 1938).

Form I–160 is a written statement executed by an official with a duty to make such a statement based upon his firsthand knowledge of the facts. This type of statement has a high degree of reliability and would apparently be admissible in court as an exception to the hearsay rule. See 28 U.S.C. 1733(a); *Wong Wing Foo* v. *McGrath*, 196 F.2d 120, 123 (C.A. 9, 1952); C. McCormick, Evidence § 315 (2d ed. 1972). Cf. *Lee Dong Sep* v. *Dulles*, 220 F.2d 264 (C.A. 2, 1955).

However, even if Form I–160 were inadmissible under judicial rules of evidence, it could still be considered in these administrative proceedings. *U.S. ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149, 157 (1923); *U.S. ex rel, Tisi* v. *Tod,* 264 U.S. 131 (1924); *U.S. ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U.S. 103, 106 (1927); *U.S. ex rel. Impastato* v. *O'Rourke*, 211 F.2d 609, 611 (C.A. 8, 1954), cert. denied, 348 U.S. 827 (1954). Official Service records have been properly considered in numerous administrative proceedings under the immigration laws. See e.g., *Monte* v. *INS*, 353 F.2d 7(C.A. 7, 1965); *Vlisidis* v. *Holland*, 245 F.2d 812 (C.A. 3, 1957); *Matter of Cheung*, 13 I. & N. Dec. 794 (BIA 1971). Moreover, due process in an administrative proceeding does not require an unlimited right to cross-examine. *Richardson* v. *Perales*, 402 U.S. 389 (1971); *Navarrette–Navarrette* v. *Landon*, 223 F.2d 234 (C.A. 9, 1955), cert. denied, 351 U.S. 911 (1956); *Navarro de Hernandez* v. *INS*, 498 F.2d 919 (C.A. 9, 1974).

In the present case, the carrier never requested a personal interview as provided under 8 CFR 280.12, nor did any of the affidavits submitted by the carrier challenge the truth of the information given in Form I–160. Under these circumstances, we have no difficulty in concluding that the standards of due process have been met and that the imformation contained in the Form I–160 is sufficient to establish that the carrier violated section 273(a). Cf. *Richardson* v. *Perales*, supra; *Wei* v. *Robinson*, 246 F.2d 739, 746 (C.A. 7, 1957), cert. denied, 355 U.S. 879 (1957).

Under section 273(a) the carrier becomes, in effect, an insurer that its alien passengers have met the visa requirements of the Act. Any bringing to the United States of an alien who does not meet these requirements incurs liability. There is no provision for mitigation of the fine. *Matter of Plane "Cut–480,"* 5 I. & N. Dec. 226 (D.D., BIA 1953).

Section 273(c), however, permits remission (forgiveness in full) in one circumstance: where it appears that prior to the alien's departure from the last port outside the United States, the carrier did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a visa was required.

113

What constitutes "reasonable diligence" varies according to the circumstances of the case. *Matter of S.S. "Florida,"* 3 I. & N. Dec. 111 (BIA, A.G. 1948). However, the carrier must undertake an inspection prior to embarkation in order to ascertain whether the passenger is an alien and whether a visa is required. *Matter of Plane "N—6104—C,"* 6 I. & N. Dec. 819 (BIA 1955).[1]

Counsel contends that the carrier's employees exercised "reasonable diligence" under the circumstances because (a) the regulations exempting certain aliens in continuous transit through the United States from the visa requirements of the Act (8 CFR 212.1(e)) had been suspended only shortly prior to the flight in question, (b) the carrier's employees in Geneva were operating under "extreme pressure" because of the number of passengers stranded in Geneva when the Zurich airport was closed due to the weather, and (c) strict adherence to the visa requirements of the Act might have inconvenienced the carrier's passengers and might in turn have led to legal action by the passengers against the carrier.

Notice of the suspension of the regulations governing transits without a visa was published as required by law in 37 Fed. Reg. 20176 (September 27, 1972).[2] In addition, at oral argument the appellate trial attorney produced a copy of a letter dated September 25, 1972, showing that the carrier was specifically notified by the Service of the impending suspension of the regulations.

Ignorance of the law is certainly not evidence that the carrier could not by the exercise of "reasonable diligence" have ascertained if the visa requirements of the Act had been met. Counsel's contention that the notice of suspension was insufficient because it did not specifically state that the Service would impose fines for violations of section 273 is without merit.

---

[1] Examples of situations where it has been held that the carrier could not have ascertained that the passenger was an alien requiring a visa are: (1) where a prospective passenger was in possession of an American birth certificate which was pronounced genuine by an American consul, the passenger's statements as to birth and parentage were corroborated by a relative, and there was nothing to arouse suspicion that the passenger was lying, *Cunard S.S. Co. v. Elting,* 97 F.2d 373, 377 (C.A. 2, 1938); (2) where a passenger purchasing a round-trip ticket to Cuba for a three and a half day excursion had resided in the United States for over 30 years, her claim to United States citizenship was corroborated by her citizen husband and citizen traveling companions, and the inspection was as thorough as that required by the Service of its own immigration inspectors, *Matter of S.S. "Florida,"* 3 I. & N. Dec. 111 (BIA, A.G. 1948); and (3) where the carrier reasonably assumed that an alien passenger residing in El Salvador was not a resident of Cuba within the exception to the transit without visa regulations in force at that time, *Matter of TAN Aircraft "HR-TNG,"* MIA-10/12.204 (BIA 1966), unreported.

[2] Suspension was originally authorized until January 1, 1973. This period was subsequently extended until July 1, 1973. 37 Fed. Reg. 28273 (December 22, 1972).

We also reject counsel's argument that the carrier's responsibility to ascertain whether the visa requirements of the Act had been met was lessened because the carrier's employees were forced to perform their duties under heavy pressure. "Reasonable diligence" does not contemplate that the carrier will dispense with the proper inspection procedures simply because it finds itself overburdened.

In addition, the fact that complying with the visa requirements of the Act might have caused the alien passenger some inconvenience did not authorize the carrier to ignore the visa requirements with impunity. *Matter of Aricraft "VT-DJK,"* supra. Likewise, the fact that the carrier might have feared legal action by an inconvenienced passenger did not entitle it to an exemption from the Act's requirements.

Counsel has pointed out that many of the carrier's overseas employees are young and that the Act requires them to have up-to-date knowledge of the visa requirements. However, proper selection and training of its employees in the visa requirements of the Act is the carrier's responsibility. See *Matter of M/V "Guadalupe,"* 13 I. & N. Dec. 67 (BIA 1968).

The thrust of counsel's arguments is towards attempting to justify the carrier's failure to properly inspect the alien passenger. However, there is no indication that the carrier could not have ascertained by the exercise of "reasonable diligence" that passenger Mutti was an alien and that a visa was required. On the contrary, a simple examination of her Swiss passport would have revealed that she was an alien without the required visa.

The district director's decision was correct. The appeal will be dismissed.

ORDER: The appeal is dismissed.