**UNITED AIRLINES, INC., et al., Plaintiffs,**

v.

**Michael D. JONES, et al., Defendants.**

### No. 01 CV 2389(ILG).

United States District Court, E.D. New York.

Sept. 14, 2004.

Christina Hagan, Esq., Hagan Coury & Associates, Brooklyn, NY, for Plaintiff.

Kristen Chapman, Esq., Assistant U.S. Attorney, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

The plaintiff, United Airlines, seeks a judgment that would declare that a fine was unlawfully imposed upon it for transporting a non-immigrant alien to the United States who did not have a valid, unexpired visa and/or passport, in violation of 8 U.S.C. §§ 1323(a)(1) and (b). A decision dated May 28, 1999, by the Board of Immigration Appeals (BIA), sustaining the fine imposed and dismissing the appeal from that imposition is sought to be reviewed and set aside. Fifteen other airlines whose appeals involving the same issues

were similarly dismissed by the BIA are joined as plaintiffs and seek the same relief. The defendant has moved, and the plaintiffs have cross-moved, for summary judgment which are the motions before the Court for resolution.

### Background

On November 22, 1994, United Airlines carried a passenger to the United States from Japan. The passenger was a citizen of the Mongolian People's Republic who arrived without a valid unexpired visa. He presented instead, a Mongolian Diplomatic Passport with a visitor visa for one entry into Canada, and applied for admission to the United States as a passenger in transit without a visa who was scheduled to connect to another airline's flight to Montreal. He was deemed ineligible for transit without visa status and excludable by virtue thereof. He was, nevertheless, paroled into the country for departure to Canada.

On December 19, 1994, the carrier was found to have violated 8 U.S.C. § 1323(a)(1) and determined to be liable for an administrative fine of $3,000 pursuant to § 1323(b). That statute provides in relevant part:

> (a)(1) It shall be unlawful for any ... transportation company ... to bring to the United States from any place outside thereof ... any alien who does not have a valid passport and an unexpired visa, if a visa was required under this chapter or regulations issued thereunder.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (b) If it appears to the satisfaction of the Attorney General that any alien has been so brought, such ... transportation company, ... shall pay to the Commissioner, a fine of $3,000 for each alien so brought ...

The carrier, in response, asserted that the passenger was eligible for a waiver of the visa requirement pursuant to 8 U.S.C. § 1182(d)(4) (1994), and 8 C.F.R. § 212.1(g) (1995), and that had a waiver been issued, a fine could not have been imposed. 8 U.S.C. § 1182(d)(4) provides in relevant part that the failure to possess the required documents "may be waived by the Attorney General and the Secretary of State acting jointly (A) on the basis of unforeseen emergency in individual cases ...." 8 C.F.R. § 212.1(g) (1995), the regulation in effect when the undocumented alien arrived, provides in relevant part:

> a valid unexpired visa and an unexpired passport ... shall be presented by each arriving non-immigrant alien except ... for the following classes:
>
> (g) A visa and a passport are not required of a non-immigrant who, either prior to his ... embarkation at a foreign port ... or at time of arrival ... in the United States, *satisfies the district director* at the port of entry that, because of an unforeseen emergency, he ... is unable to present the required documents, in which case a waiver application shall be made on Form I–193. The district director *may approve a waiver of documents in each case in which he ... is satisfied that the non-immigrant cannot present the required documents because of an unforeseen emergency and the waiver would be appropriate in the circumstances.*[1] (emphasis added).

The carriers also contend that the Immigration and Naturalization Service (INS) paroled the aliens pursuant to a belatedly adopted "policy" in lieu of granting them

---

1. This regulation was amended, effective March 22, 1996, by removing the introductory language, "A visa and a passport are not required of a non-immigrant." 8 C.F.R. § 212.1(g)(1996). The amendment was designed to conform the regulation with the clear intent of Congress expressed in U.S.C. § 1323(a)(1).

waivers solely for the purpose of exacting the fines and that in doing so, the agency acted unlawfully and, in any event, ran afoul of the Administrative Procedures Act ("APA").

The defendant filed a motion for summary judgment and the plaintiffs cross-moved for summary judgment. The issues presented by their respective motions are: (1) the plaintiffs' standing to challenge the parole of undocumented aliens; (2) the legality of the fines imposed upon the paroled, undocumented aliens; (3) the implication of the APA in granting parole rather than waivers; (4) the delay in forwarding plaintiffs' appeal to the BIA and its consequences, if any.

### Discussion

The cases which recite the fundamental principles by which motions for summary judgment are governed are legion. It will suffice to cite the three cases invariably referenced which collectively teach, in essence, that summary judgment will not lie if there is a genuine dispute about a material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the non-movant. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The rest is commentary.

■ The core issue of this dispute, the determination of which will effectively resolve it, can simply be stated to be whether the defendant (the INS) acted lawfully in granting parole rather than a waiver to an arriving undocumented non-immigrant alien and imposing a fine upon the transportation company (the airline) for bringing that alien to our shores. In the final analysis, that issue will be resolved by a consideration of the relevant statutes, regulations and some cases which have construed and applied them.

■ At the outset, it may be superfluous to note that Congress has the power to police entrants at the country's borders. That power is derived from the sovereign authority of the United States, *see, e.g., United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *Chae Chan Ping v. United States,* 130 U.S. 581, 600, 9 S.Ct. 623, 32 L.Ed. 1068 (1889); *Edye v. Robertson,* 112 U.S. 580, 591, 5 S.Ct. 247, 28 L.Ed. 798 (1884), and encompasses not only the power to regulate commerce with foreign nations and between the states, but also the power to preclude foreigners from entering the country and the power to admit them upon such conditions as Congress may see fit to prescribe.

### A. The Authority of the INS to Parole

The fact that the carrier's passengers were paroled into the country rather than having permitted their entry by waiving the documentary pre-requisites, is characterized by the plaintiffs as reflecting the nefarious adoption of a new policy by the INS, designed to legitimize the imposition of fines which the grant of waivers would have precluded. That characterization and the motive imputed to it are both wrong. 8 U.S.C. § 1182(5)(A) is not reflective of a newly adopted policy. It explicitly confers upon the Attorney General "discretion" to *"parole* into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." (emphasis added). That authority is clearly reflected as well in many cases, decided long before November 22, 1994, when United Airlines arrived in New York with a passenger from Japan.

In *Matter of Plane "F–BHSQ,"* 1962 WL 12863, 9 I. & N. Dec. 595 (BIA 1962), a passenger was transported from Paris, France to New York by Air France. He was an alien without the documentary prerequisites for entry into this country. The carrier was fined in accordance with 8 U.S.C. § 1323(b) notwithstanding that the alien was paroled into the country. The carrier appealed the imposition of the fine and sought its remission claiming it exercised due diligence in transporting the alien in the belief that he would be granted a visa waiver on the ground of an unforeseen emergency. In denying the carrier's request for remission of the fine and dismissing the appeal, the Board of Immigration Appeal (BIA) wrote:

Under this statute [8 U.S.C. § 1323(a), (b) ], the carrier had the duty of ascertaining, prior to his [the alien's] embarkation, that the alien passenger was in possession of documents valid for admission into the United States. *It does not contemplate that this or any other carrier will embark aliens for the United States when they lack visas, with the hope that liability can be avoided by the granting of a waiver or parole to the individual alien subsequent to his arrival in this country.* This section of the law was clearly enacted to prevent speculation such as this on the part of the carrier's bringing aliens to the United States. (emphasis added).

*Matter of Plane "F–BHSO,"* 1962 WL 12863, 9 I. & N. Dec. at 596.

In *Matter of Aircraft "VT DJK,"* 1967 WL 14011, 12 I. & N. Dec. 267 (BIA 1967), a non-immigrant alien was carried from London to New York by Air India on August 31, 1966. He did not possess the requisite visa, but was nevertheless paroled into the United States to accomplish the purpose of his visit. The carrier was fined in accordance with 8 U.S.C. § 1323(a), (b), and appealed its imposition. In dismissing the appeal, the BIA held that the carrier derived no assistance from its agreement with the passenger that in the event he was not admitted into the country upon arriving in New York, he would be returned to London. The Court then went on to write:

The manifest intention of the Congress, as appears from the plain language of the statute, was to subject carriers to a penalty for taking on board and bringing to the United States aliens not in possession of the required documents. If the carrier were to escape such penalty because of developments subsequent to arrival in the United States and exclusion of the alien passenger, the carrier would be in a position of being permitted to speculate upon the administration and enforcement of the law. This, obviously, is not within the contemplation of the statute. Hence, when a carrier takes on board and brings a nonimmigrant to the United States who is not in possession of the documents required by the law and regulations, it has thereby incurred the administrative penalty specified in the statute.

\*       \*       \*       \*       \*       \*

*Matter of Aircraft "VT DJK,"* 1967 WL 14011, 12 I. & N. Dec. at 268.

The BIA also rejected the carrier's assertion that it should not have been fined because "it was advised by an immigration officer on duty at the time of the alien passenger's arrival in the United States that it would not be prejudiced for bringing him here without a visa. *The reason . . . is that liability to the fine had already been incurred."* (emphasis mine) *See also Matter of Swissair "Flight # 164,"* 1974 WL 30012, 15 I. & N. Dec. 111 (BIA 1974) (Under Section 273(a) [8 U.S.C. § 1323(a), (b) ] the carrier becomes, in effect, an insurer that its alien passengers have met the visa requirements of the Act. Bringing

an alien to the United States who does not meet these requirements, incurs liability).

In this Court's view, the foregoing is dispositive of this case and should suffice, without more, to deny the plaintiffs' motion for summary judgment and grant the defendants' motion for summary judgment. Given the extensive submissions and oral arguments addressing other bases upon which the plaintiffs aver their entitlement to relief, and the defendant avers they are not, further discussion is warranted for two reasons. First, the considerable time and effort each side has expended in support of their respective positions, at the very least, gives them a legitimate expectation that the Court will address them. Second, conflicting decisions by the BIA in this regard have been based, in this Court's view, upon questionable interpretations of the relevant regulations.

Implementing the undisputed power of the government to control its borders and to preclude foreigners from crossing them or permit them to do so upon such conditions as it may prescribe, the Immigration and Naturalization Act of 1924 was enacted by Congress. That statute was the progenitor of what is currently 8 U.S.C. § § 1323(a), (b). That Act quite plainly placed upon carriers the burden of acting at the peril that fines might be imposed if they brought into the country nonimmigrant aliens who do "not have a valid passport and an unexpired visa if a visa was required under this chapter or the regulations issued thereunder." 8 U.S.C. § 1323(a), *supra*. A valid passport and an unexpired visa are required by the express provisions of 8 U.S.C. § 1182(a)(7)(B)(i)(I) or (II). However, the requirements of that statute may be waived by the appropriate authority on the basis of an unforeseen emergency in individual cases. 8 U.S.C. § 1182(b)(4). Those statutes are unambiguous and leave little room for disputed interpretation. It is the last phrase

of § 1323(a) which goes to the heart of this case, namely, "or the regulations issued thereunder." It is that phrase, and the questionable reading of those regulations by the BIA which was plainly inconsistent with the intent of Congress and which has spawned conflicting decisions by that Board.

The issue is put into sharp focus by *Matter of Plane "CUT–604,"* 1958 WL 9850, 7 I. & N. Dec. 701 (BIA 1958), in which a carrier arrived at the port of Miami, Florida, with an alien passenger who was not in possession of an unexpired visa or valid document in lieu thereof. She was, however, granted a waiver and admitted as a lawfully returning permanent resident alien pursuant to a regulation then in effect which read:

> § 211.1 *Visas.* A valid unexpired immigrant visa shall be presented by each arriving immigrant alien except an immigrant who ... (b) ... (3) satisfies the district director in charge of the port of entry that there is good cause for the failure to present the required document ....

*Matter of Plane "CUT–604,"* 1958 WL 9850, 7 I. & N. Dec. at 702.

The carrier was fined in accordance with 8 U.S.C. § 1323 and the carrier appealed. The Board stated the issue to be whether the waiver relieved the carrier of liability to fine and began its decision thus: "We have previously answered this question both affirmatively and negatively, depending upon the regulations in effect at the time involved." *Id.* at 1958 WL 9850, 7 I. & N. Dec. at 701. Two prior decisions of the Board are then referenced. The first, *Matter of Plane CCA "CUT–532,"* 1954 WL 7857, 6 I. & N. Dec. 262 (BIA 1954), waived visa and passport requirements for an alien who was previously lawfully admitted for permanent residence who, upon arrival following a temporary absence did

not have the required documentation. A fine was imposed upon the carrier which was appealed. The regulation then in effect and pursuant to which the waiver was granted, provided in relevant part that:

> any alien ... who has been lawfully admitted to the United States ... and who is applying for admission ... after a temporary absence, *is not required to present a visa if in his particular case a waiver of the visa requirement is granted [by the appropriate officer]* .... (emphasis added).

*Matter of Plane CCA "CUT–532,"* 1954 WL 7857, 6 I. & N. Dec. at 263.

The Board held that: "Since the regulation provides that a visa is not required *if a waiver in an individual case is granted,* we must find a penalty under section 273 [2] has not been incurred since that section applies only to the bringing of aliens without a visa 'if a visa was required under the Act or regulations issued thereunder.'" *Id.* A visa or a passport was required, else why was it necessary for those documents to be waived? It is interesting to note that the regulation cited in *Matter of Plane "CUT–604,"* as those upon which the Board in "CUT–532" relied, was not the regulation referred to in this case ("532") as the one relied on. The Board in "CUT–604" writes "that the regulation as thus phrased created a blanket visa waiver and that a visa was *not required* because a waiver in an individual case had been granted." *Matter of Plane "CUT–604,"* 1958 WL 9850, 7 I. & N. Dec. at 702 (emphasis added). That reading of the regulation, as will be discussed below, is not only inconsistent with and indifferent to Congressional intent, but is flawed.

In the second case, *In the Matter of Paa Plane Flight 204,* 1955 WL 8758, 6 I. & N. Dec. 810 (BIA 1955), a fine was imposed upon the carrier who brought a returning resident alien to the United States and who, after arrival, was granted a waiver on the basis of an unforeseen emergency pursuant to 8 C.F.R. § 211.3, which then read:

> Authority to grant individual waivers.
>
> Any alien ... who has been lawfully admitted to the United States for permanent residence and who is applying for admission to the United States after a temporary absence may be granted ... a visa waiver ... upon a determination ... that presentation of a visa is impractical because of emergent circumstances over which the alien has no control and that undue hardship would result to such alien if such presentation is required.

*Matter of Plane "CUT–604,"* 1958 WL 9850, 7 I. & N. Dec. at 702.

The Board held that this case was governed by *In the Matter of Ss. "Florida,"* 6 I. & N. Dec. 85 (BIA 1954), and that the fine was properly imposed.

The Board in *Plane "CUT–604,"* following the discussion of those two cases and based upon the regulation which was in effect when the alien there arrived and which has been set out above as § 211.1, held that "The clear meaning of that regulation provided a blanket general waiver to the returning resident immigrant alien and that the carrier was not subject to a fine for bringing to this country 'an alien who is the beneficiary of a standing waiver published in the regulations.' Again, the reason is that the statute provides for a penalty only if a visa is required and under this regulation, which has the force and effect of law, a visa is not required." *Matter of Plane "CUT–604,"* at 1958 WL 9850, 7 I. & N. Dec. at 703.

In Manning, *The Absurdity Doctrine,* 116 Harv. L.Rev. 2387 (2003), Professor Manning wrote that "A court's obligation

---

2.  The precursor to 8 U.S.C. § 1323.

to the text ceases when 'the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.'" (Citing *Sturges v. Crowninshield*, 17 U.S. 122, 203, 4 Wheat. 122, 4 L.Ed. 529 (1819) (Marshall, Ch. J.)). It would be an exaggeration to suggest that the BIA's interpretation of the regulations as granting a blanket waiver was so monstrous that all mankind would unhesitatingly unite in rejecting it. It suffices to say that, in my view, the BIA's application of those regulations was misplaced.

The statute, 8 U.S.C. § 1323, is unambiguous. A carrier acts unlawfully, it provides, when it brings to the United States an undocumented alien and may be fined for doing so. Liability is incurred by the carrier at the moment that alien is brought here. *See Matter of Aircraft "VT DJK," supra; Matter of Plane "F–BHSQ," supra; Matter of Swissair "Flight # 164," supra.* That reading of the statute advances the recognized intent of Congress in enacting it. In construing an analogous statute[3] the Supreme Court wrote in *Elting v. North German Lloyd*, 287 U.S. 324, 327–28, 53 S.Ct. 164, 77 L.Ed. 337 (1932):

> We do not think that it can be said, in the face of the explicit language of the statute, that the respondent could lawfully bring the alien, *because he lawfully might come to the United States.* The statute imposes no penalty upon the alien for coming beyond the possible denial of his application to enter. But it does declare that it shall be unlawful for the steamship company to bring him if 'not admissible,' as was the case and imposes the penalty if the Secretary finds, as he did, that an inadmissible alien has been brought. In plain terms, the act placed on respondent the burden

of acting at its peril that the fine might be imposed . . . .

The regulations which the BIA construed in *Matter of Plane "Cut–604," supra*, to create a blanket general waiver to that returning alien and that, therefore, no visa was required thus absolving the carrier from a violation of the statute read:

> A valid unexpired immigrant visa shall be presented by each arriving immigrant alien except an immigrant who . . . (b) . . . (3) satisfies the district director in charge of the port of entry that there is good cause for the failure to present the required document . . . .

8 C.F.R. § 211.1.

One parses that regulation in vain to find language creating a blanket general waiver or even the slightest hint of one. Rather, a plain reading of the text is that a visa is required and shall be presented by the arriving alien. If he does not have one, he will have been brought by the carrier in violation of 8 U.S.C. § 1323(a)(2). Thereafter, however, the required document *may* be waived, in the individual case, *if* the alien satisfies the appropriate official that there was good cause for failing to present the required document.

The regulation in *Matter of Plane Cca "CUT–532," supra*, which was also construed to create a blanket waiver read:

> *Immigrants not required to present visas.* Aliens of the following-described classes * * * who are otherwise admissible, who have been lawfully admitted to the United States for permanent residence, and who are applying for admission to the United States after a temporary absence, are not required to present visas: * * *

---

**3.** "[I]t shall be unlawful for any person . . . to bring to the United States . . . any alien not admissible under the terms of this Act or regulations made thereunder . . . ."

(e) Any alien in whose particular case a waiver of the visa requirement is granted * * * upon a determination * * * that presentation of a visa is impracticable because of emergent circumstances over which the alien has no control and that undue hardship would result to such alien if such presentation is required. * * *

Here, too, a reading of that regulation in its entirety compels the conclusion that the immigrant is not required to present a visa *if* a determination of emergent circumstances is made *after* his arrival without one; that its presentation was prevented by an unforeseen emergency and hardship would result.

The interpretation placed upon those regulations by the BIA not only ignores the condition precedent to the grant of a waiver inherent in each, it also aborts the intent of Congress as clearly reflected in §§ 1323(a) and (b).

The intent of Congress was also expressly stated in the Report of the Committee on the Judiciary to which was referred the bill (H.R.5678) to revise the laws relating to immigration, naturalization and nationality, which became the Immigration and Nationality Act (INA) of 1952, the progenitor of the current 8 U.S.C. § 1182. That Report advised in part as follows: "The discretionary authority to waive documents has been substantially curtailed . . . . The bill provides in section 212(d)(4), [now § 1182(d)(4)], that in the case of nonimmigrants, the documentary requirement may be waived only by joint action of the Attorney General and the Secretary of State on the basis of (1) individual emergency cases, . . . . *This will preclude the granting of blanket waivers of the documentary requirements on the ground of the existence of an emergency.*" 1952 U.S.C.C.A.N. 1653, 1706–07. That unambiguous statement of Congressional intent eluded the BIA.

The waiver granted the alien is for his benefit and permits him to enter the country from which he otherwise would have been excluded. It plainly is not intended to confer a benefit upon the carrier which violated our laws by bringing him here without first ascertaining that he possessed the required documentation. That the interpretation of the regulations given them by the BIA was flawed is also learned from *Hamburg–American Line v. United States*, 291 U.S. 420, 54 S.Ct. 491, 78 L.Ed. 887 (1934). There, an Ireland native, resident in the United States, returned from Ireland after a temporary visit abroad. He did not have an unexpired visa or a permit to re-enter. His exclusion was ordered on his arrival, but he was eventually admitted. The carrier was fined for bringing him here and after paying under protest, appealed to recover it.

The fine was imposed pursuant to the then § 16 of the Immigration Act of 1924, which eventually evolved into the current § 1323. The carrier insisted that the admission of the alien took the case out of the statute and that if an alien is admitted, no liability for the fine can be said to have accrued.

The Court's response, speaking through Chief Justice Hughes, is exquisitely apposite:

> But Section 16 does not make the liability turn upon the admissibility or admission of the alien . . . . Section 16 of the Act of 1924 makes it clear that the occasion for the fine is the bringing in of the alien without an unexpired visa . . . . The question whether the Secretary of Labor had authority to admit the alien in this instance need not be considered, for if it were assumed that the Secretary under Section 13 could admit the alien in his discretion, the fine would still stand. We agree with the Circuit Court of Appeals in the view that Sec-

tion 13(f) *'preserves the fine against any discretionary admission.'*[4] (emphasis added).

291 U.S. at 425–26, 54 S.Ct. 491

*Hamburg–American Line v. United States* was not unfamiliar to the BIA as *In the Matter of Ss. Florida,* 1954 WL 7822, 6 I. & N. Dec. 85 (BIA 1954) attests. In that case, the BIA held that an individual waiver of documents granted a nonimmigrant on the basis of unforeseen emergency subsequent to arrival in the United States does not constitute a defense to the imposition of a fine under § 273 of the Immigration and Nationality Act (currently 8 U.S.C. § 1323). A motion for reconsideration was then filed, and in denying it, the Board held:

> The manifest intention of Congress as appears from the plain language of section 273 of the Immigration and Nationality Act [currently § 1323] was to subject carriers to a penalty for taking on board and bringing to the United States aliens not in possession of required documents. If the carrier were to escape such penalty merely because the documents were waived subsequent to arrival ..., the carrier would be in a position of being permitted to speculate upon the administration and enforcement of the law. When a carrier takes on board and brings a nonimmigrant to the United States not in possession of the documents required by law and regulation, it has thereby incurred the administrative penalty specified in section 273 of the Immigration and Nationality Act. ·
>
> If in the case of an individual alien a waiver of the documents is lawfully granted ... on the basis of an unforeseen emergency ... there is nothing in

the law as alleged by counsel which automatically removes from the carrier the liability already incurred.

*The only conditions under which a penalty may not be imposed* are stated in subsection (c) of section 273 [currently § 1323(c)] which provides that a carrier is exempt from a fine if prior to the departure of the vessel from the last port outside the United States he did not know and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien and that a visa was required. (emphasis added).

*Id.* at 1954 WL 7822, 6 I. & N. Dec. at 88–89.

In arriving at its conclusion, the Board cited *Hamburg–American Line* as being entirely analogous.

In *Penninsular & Occidental Steamship Company v. United States,* the United States District Court for the Southern District of Florida, on stipulated facts, held that the carrier was liable for the fine imposed by the statute for bringing into the United States undocumented aliens even though each alien was admitted under a waiver after entry. The carrier then appealed that determination to the Court of Appeals for the Fifth Circuit which, in affirming the judgment of the district court wrote, in 242 F.2d 639, 641 (5th Cir.1957):

> The argument, neatly and cleverly put, a meld of Section 273 and 212[5] runs like this: (a) the penalty is incurred only when an alien is required to have a visa; (b) the only time a visa is required is 'upon application for admission;' (c) if administratively the visa is waived, it

**4.** Section 13(f) provides that "Nothing in this section shall authorize the remission or refunding of a fine, liability to which has been accrued under section 16." *Cf.* 8 U.S.C. § 1323(c) (2004).

**5.** Section 273 is currently 8 U.S.C. § 1323 and § 212 is currently 8 U.S.C. § 1182.

means that as of the only pertinent time of 'application for admission' none was needed, hence none was ever required. *But once stated it exhausts itself and fails because of an overreliance on the word 'required' as meaning the conditions under which a particular alien is finally allowed to enter. In text and context it is plain that Congress meant for the term to describe those classes of persons who must have a passport and unexpired visa as a condition to entry. If a person coming within any one of such classes is brought to the United States, it is incumbent upon the carrier, at least insofar as what it knows and could have ascertained through the exercise of reasonable diligence to make certain that such alien has an unexpired visa. And if any such person within any such class is brought to the United States without an unexpired visa, the penalty is incurred.* (emphasis added). Fines and administrative penalties against transportation companies have long been a part of the structure of immigration laws. Frequently severe and occasionally harsh in specific application, they effectuate a policy of imposing on carriers initial determination of many specific matters relating to eligibility of aliens for entry. Relief from hardship is, as in Section 273(c), frequently afforded through administrative remission or mitigation of penalties. But the requirement that carriers shall use reasonable diligence to make certain that all persons within the specified classes have unexpired visas would be lessened, *and the Congressional policy against such persons coming here without visas undermined, if the sanction of the penalty evaporated merely because an individual alien might be given a waiver.* (emphasis added).

Then, noting the Congressional purpose reflected in the Immigration and Nationality Act "to compel carriers, under the pain of penalties which increase vigilance, to police enforcement and compliance with many parts of the immigration laws, *Hamburg–American Line v. United States,* 291 U.S. 420, 54 S.Ct. 491, 78 L.Ed. 887 (1934) ...." (other citations omitted), the Court went on to make this incisive observation:

And intrinsically, the 1952 Act which included for the first time nonimmigrant aliens contains terms indicating quite persuasively that Congress carefully distinguished between penalties against the carrier and the ultimate admission of the aliens. In Section 273(b), note 1, supra, the $1,000 penalty plus a 'sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival * * *' is imposed. But the repayment to the alien of transportation charges is expressly excepted 'in the case of any * * * alien who is admitted, or permitted to land temporarily.' *The section imposing transportation costs 'in addition' to the penalty where the alien is not admitted argues strongly that Congress intended the penalty to be incurred even though, by diplomatic approaches or administrative proceedings, the alien might be allowed ultimately to enter.* (emphasis added).

242 F.2d at 641.

The opinion of the court has been excerpted so extensively because the precision with which the Congressional intent is identified by an unassailable analysis of the relevant statutes is exquisitely applicable to the core issue before the Court in this case and compels a similar conclusion.

*Penninsular & Occidental Steamship,* 242 F.2d 639 (5th Cir.1957), was also regarded as persuasively dispositive in *Matter of M/V "Runaway,"* 1981 WL 158835, 18 I. & N. Dec. 127, 132 (BIA 1981), which held that since liability for fines under § 273(a) is determined when the alien is

brought to the United States without the required documentation, it is immaterial that the requirement was subsequently waived. The Board traced the liability of carriers for bringing undocumented aliens to our shores to § 16 of the Immigration and Nationality Act of 1924, which aimed at discouraging carriers from doing so and was regarded as an important weapon in the enforcement of the immigration laws. *See also Matter of M/V "Solemn Judge,"* 1982 WL 190670, 18 I. & N. Dec. 186 (BIA 1982); *In the Matter of Paa Plane Flight 204,* 1955 WL 8758, 6 I. & N. Dec. 810 (BIA 1955); *Matter of Ss. Liberte,* 1954 WL 7844, 6 I. & N. Dec. 204 (BIA 1954); *Matter of Eastern Airlines, Inc. Flight # 798,* 20 I. & N. Dec. 57 (BIA 1989).

Buttressing the clear intent of Congress that the occasion for imposing a fine upon the carrier is the bringing of the undocumented alien to the United States to which the waiver of the presentation of the required documents is no defense is 8 U.S.C. § 1323(c) which, in relevant part provides that:

> ... such fines shall not be remitted or refunded, unless it appears to the satisfaction of the Attorney General that such person ..., prior to the departure of the vessel or aircraft from the last port outside the United States, did not know and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a valid passport or visa was required.

It is significant to note that the statute forbids fines to be "remitted" or "refunded." Those words are not synonymous. To "remit" means to refrain from exacting a payment. To "refund" means to give back, to return money in restitution or repayment. Webster's Third New International Dictionary, Unabridged (1912, 1920). It must follow therefore, that a fine is either forgiven or refunded only if the

carrier, prior to departure, could not ascertain with reasonable diligence that the alien it was transporting required a visa or a passport.

On October 25, 1994, subdivision (e) of § 1323 was enacted, which provides in relevant part that: "A fine ... may be reduced, refunded or waived under such regulations as the Attorney General shall prescribe in cases in which ... (2) circumstances exist that the Attorney General determines would justify such reduction, refund or waiver." The statute was to become effective 60 days thereafter, or December 25, 1994, and was therefore not in effect on November 22, 1994, when the undocumented alien in this case was brought to the United States. The Court was unable to find the legislative history of that subdivision. A plain reading of it, however, is that discretion is conferred upon the Attorney General to remit or refund or reduce a fine in cases which he determines justify it in addition to those in which the carrier could not ascertain with reasonable diligence that the alien it was bringing to the country required a visa or a passport. This subdivision provides no basis for an assertion that it authorizes a blanket general waiver. It does not alter the liability the carrier incurs by 8 U.S.C. § 1323 the moment the undocumented alien is brought here. It is only thereafter, if the Attorney General determines that justification for it exists, that the fine which has already been incurred may be reduced or refunded or waived.

In sum, to find a blanket general waiver of the fine based entirely, as has been the case, upon the nuanced overreliance on the word "required" *Penninsular & Occidental Steamship Company,* or more precisely, upon where within the regulation the word "required" has been found, is to ignore the Congressional intent the United States Supreme Court and other cases

have found to be clearly expressed in 8 U.S.C. § 1323; and is to ignore the fact that it is the presentation of the required document that is being waived for the benefit of the alien and not for the benefit of the carrier as against which the fine is preserved against any discretionary admission as *Hamburg–American Line* declared.

## CAN THE COURT REJECT THE AGENCY'S CONSTRUCTION OF THE REGULATION?

■ The answer to that question was provided in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress [FN9]

F.N.9. The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent .... If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect. (citations omitted).

*See also Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 54–55 (2d Cir.2004) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (citation omitted); *Coke v. Long Island Care At Home, Ltd.*, 376 F.3d 118, 126 (2d Cir.2004).

It is beyond cavil that the "intent of Congress is clear" and that should be the

end of the matter. The clarity of Congress' intention has been declared by the Supreme Court of the United States in *Hamburg–American Line v. United States, supra*, in words which could not be more direct, which have been cited above and which bear repeating, viz:

> ... Section 16 [the ancestor of the current § 1323] does not make the liability turn upon the admissibility or admission of the alien ... Section 16 of the Act of 1924 makes it clear that the occasion for the fine is the bringing in of the alien without an unexpired visa"

and adding that the fine is preserved against any discretionary admission.

The Board has unequivocally acknowledged that Congressional intent. *See, e.g., In the Matter of Ss. Florida, supra*, 1954 WL 7822, 6 I. & N. Dec. at 88, in words which are unambiguously expressed and which have been cited above, but also bear repeating in this context, viz: *"The manifest intention of Congress as appears from the plain language of section 273 of the Immigration and Nationality Act* [currently § 1323] *was to subject carriers to a penalty for taking on board and bringing to the United States aliens not in possession of required documents."* (emphasis mine). *See also Matter of Plane "F–BHSQ," supra; Matter of Aircraft "VT DJK," supra.*

In obedience to the teaching of *Chevron*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694, that the judiciary must reject administrative constructions which are clearly contrary to Congressional intent and, as has been demonstrated, the construction placed upon the assorted Regulations by the Board of Immigration Appeals has been clearly contrary to that intent must be, and hereby are, rejected.

■ It should be added that those prior administrative decisions which are so clearly contrary to congressional intent

can form no basis for an estoppel which is not available against the government. *See, e.g., INS v. Miranda,* 459 U.S. 14, 18, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982).

The Court has considered the additional arguments advanced by the plaintiffs and found them to be without merit.

For the foregoing reasons, the defendants' motion for summary judgment is granted and the plaintiffs' cross-motion is denied.

SO ORDERED.