04-6018-cv
*United Airlines, Inc. v. Brien*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2007

(Argued: May 12, 2008                  Decided: November 20, 2009)
Docket Nos. 04-6018-cv(L), 07-0689-cv(CON), 07-1593-cv(CON)

————————————

UNITED AIRLINES, INC., AIR INDIA LIMITED, AIR ESPANA, BRITISH AIRWAYS PLC, CAYMAN AIRWAYS, LTD., COMPAGNIE NATIONALE AIR FRANCE, DEUTSCHE LUFTHANSA AG, EL-AL ISRAEL AIRLINES, LTD., FINNAIR OY, FLUGLEIDIR, H.F., IBERIA, LINEAS AEREAS DE ESPANA, S.A., LAUDA AIR LUFTFAHRT, A.G., LTU LUFTTRANSPORT-UNTERNEHEMEN GMBH & CO., OSTERREICHE LUFTVERKEHRS, A.G., SOUTH AFRICAN AIRWAYS PROPRIETARY, LIMITED, VIRGIN ATLANTIC AIRWAYS, LTD., AIR JAMAICA LIMITED, TRANSPORTES AREOS PORTUGUESES, S.A., NORTH AMERICAN AIRLINES, INC., SINGAPORE AIRLINES LIMITED,

*Plaintiffs-Appellants*,

*-v.-*

UNA F. BRIEN, DIRECTOR, U.S. DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, NATIONAL FINES OFFICE, KEVIN ROONEY, ACTING COMMISSIONER, JOHN D. ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES, U.S. DEPARTMENT OF JUSTICE, PAUL W. SCHMIDT, CHAIRMAN, JAMES ZIGLAR, COMMISSIONER, U.S. DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, LORI SCHIALABBA, ACTING CHAIRMAN, U.S. DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, BOARD OF IMMIGRATION APPEALS, COLIN L. POWELL,

*Defendants-Appellees*,

MICHAEL JONES,

*Defendant.*

————————————

BEFORE: FEINBERG, MINER, and HALL, *Circuit Judges.*

————————————

This is a consolidated appeal from three final Orders of the United States District Court for the Eastern District of New York (Glasser, *J.*). In the underlying lawsuits, international airlines companies challenged the INS's imposition of fines against the airlines for bringing undocumented immigrant and non-immigrant aliens into the United States in violation of 8 U.S.C. § 1323 (the "Penalty Statute"). In *United Airlines, Inc. v. Brien*, we REVERSE in part the district court's ruling and hold that the Board of Immigration Appeals Rule, which exempts airlines from liability for bringing an undocumented alien to the United States when the alien receives a post-arrival visa waiver, is consistent with the Penalty Statute; we also AFFIRM in part the district court's ruling and hold that the INS did not act arbitrarily when it employed its parole power rather than its visa waiver authority to admit aliens into the United States. In *Air India Ltd. v. Brien*, we REVERSE the district court's grant of relief to the INS under Rule 60(b)(6) and hold that the Rule 60 motion was procedurally defective because the circumstances were not sufficiently extraordinary to merit such relief. In *Finnair OY v. Brien*, we REVERSE the district court's grant of summary judgment to the INS and hold that: (1) the INS's 1996 amendment of its tourist visa waiver regulation is invalid because it was promulgated in violation of the joint action requirement, and (2) the State Department's 1999 version of the tourist visa waiver regulation is invalid because it was promulgated in violation of the joint action requirement and without notice-and-comment.

———————————————

SCOTT DUNN, Assistant United States Attorney, (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, and F. Franklin Amanat, Assistant United States Attorney, *on the brief*), Brooklyn, New York, *for Defendants-Appellees*.

CHRISTINA HAGAN, (Jonathan A. Fuchs, *on the brief*), Hagan, Coury & Associates, Brooklyn, New York, *for Plaintiffs-Appellants*.

_____

HALL, *Circuit Judge*:

This is a consolidated appeal from three final Orders of the United States District Court for the Eastern District of New York (Glasser, J.): (1) Plaintiffs in *United Airlines, Inc. v. Brien* ("*United Airlines*") appeal from a Memorandum and Order entered September 23, 2004, granting Defendants' motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment; (2) Plaintiffs in *Air India Ltd. v. Brien* ("*Air India*") appeal from a Memorandum and Order entered December 27, 2006, granting Defendants' Fed. R. Civ. P. 60(b)(6) motion for relief from judgment, and from a subsequent Order entered February 13, 2007, clarifying that the December 27, 2006, Order granted Defendants' motion for summary judgment and denied Plaintiffs' cross-motion for summary judgment; and (3) Plaintiffs in *Finnair OY v. Brien* ("*Finnair*") appeal from an Order entered February 13, 2007, granting Defendants' motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment. By Order of this Court dated May 18, 2007, the three appeals were consolidated. In *United Airlines*, we REVERSE in part and AFFIRM in part. We REVERSE the judgment of the district court in the *Air India* and *Finnair* cases.

## I. BACKGROUND

The three underlying lawsuits sprang from a 1995 umbrella lawsuit brought by twelve

international airline companies against the Immigration and Naturalization Service ("INS").[1] *See*

*Air España v. Brien*, No. 95-CV-1650, 1997 WL 469992 (E.D.N.Y. June 18, 1997). The *Air*

*España* litigation challenged the imposition of fines against the airlines for bringing

undocumented immigrant and non-immigrant aliens into the United States in violation of 8

U.S.C. § 1323 (the "Penalty Statute").[2] *Id.*, at *10. The district court ruled in favor of the INS in

that action. *See id.*, at *11-16. On appeal in 1999, this Court found that the airlines had not yet

exhausted their administrative remedies. *See Air España v. Brien*, 165 F.3d 148, 152-53 (2d Cir.

1999).[3] Since that time, the BIA has made final administrative decisions on the airlines' claims,

each of which affirmed the government's imposition of fines against airlines that had transported

undocumented aliens into the United States in violation of 8 U.S.C. § 1323. The airlines

challenged those decisions in the three separate lawsuits leading to this appeal. Because each

---

[1] The underlying actions all occurred prior to the establishment of the Department of Homeland Security ("Homeland Security") and the dissolution of the INS on March 1, 2003. The functions of the INS have been distributed to various agencies within Homeland Security, namely Customs and Border Protection and the United States Citizenship and Immigration Services. For the purposes of this decision, however, all references will be to the original parties, which includes the INS.

[2] The Penalty Statute provides:

> It shall be unlawful for any person, including any transportation company, . . . to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have a valid passport and an unexpired visa, if a visa was required under this chapter or regulations issued thereunder. . . . [S]uch person, or transportation company, . . . shall pay to the Commissioner a fine of $3,000 for each alien so brought . . ..

8 U.S.C. § 1323(a)-(b).

[3] The *Air España* Court also affirmed the district court's holding that the voluntary payment doctrine barred the airlines' recovery of fines assessed for transporting undocumented immigrant aliens between 1988 and 1993. *See Air España*, 165 F.3d at 153-54.

4

lawsuit raises distinct issues and implicates a different set of statutes and regulations, each is addressed separately in this opinion.

A.    *United Airlines*:  Pre-1996 Tourist Regulation and the Parole Policy

United Airlines ("United") has challenged the INS's imposition of a fine for bringing a non-immigrant who did not possess a valid passport and/or visa needed for entry into the United States.  In 1994, United transported a Mongolian citizen into the United States for purposes of his catching a connecting flight to Montreal.  The INS deemed the Mongolian citizen inadmissible, but it nonetheless paroled him into the United States so that he could travel on to Canada.  The INS then fined United for violating the Penalty Statute by "bring[ing] to the United States . . . any alien who does not have a valid passport and an unexpired visa."  8 U.S.C. § 1323(a)(1); *see also United Airlines, Inc. v. Jones*, 337 F. Supp. 2d 406, 408 (E.D.N.Y. 2004).

United challenged the fine.  It claimed that the Penalty Statute did not apply because the alien qualified for an emergency waiver, and if the alien had received a waiver no fine could have been imposed.  At the time, the emergency waiver regulation stated that "[a] visa and a passport are not required of a non-immigrant who" demonstrates an unforeseen emergency.  8 C.F.R. § 212.1(g) (pre-1996).  The Penalty Statute prohibits transporting an undocumented alien "if a visa was required under this chapter or regulations issued thereunder."  8 U.S.C. § 1323(a)(1).  Under the controlling BIA precedent at the time, the relevant language of the emergency waiver regulation—"are not required"—negated application of the Penalty Statute in those cases where the visa requirement was waived because the alien demonstrated an unforeseen emergency.

United also argued that the INS had adopted a "policy" to parole aliens, such as the Mongolian citizen, into the United States, rather than waive the visa requirement and admit them,

5

so as to preserve its ability to apply the Penalty Statute and collect a fine. It claimed that this policy was illegal and violated the Administrative Procedures Act (the "APA"). As framed by the district court, the question before it was "whether the defendant (the INS) acted lawfully in granting parole rather than a waiver to an arriving undocumented non-immigrant alien and imposing a fine upon the transportation company (the airline) for bringing that alien to our shores." *United Airlines*, 337 F. Supp. 2d at 409. The district court answered that question in the affirmative, finding the INS's challenged action lawful.

The district court first addressed United's claim that the INS had adopted a "policy" of paroling aliens into the United States rather than waiving the visa requirement "to legitimize the imposition of fines which the grant of waivers would have precluded." *Id.* The court found that under the Penalty Statute, the airline incurs liability for the fine when it brings an undocumented alien into the United States, notwithstanding any waiver or grant of parole that might occur after the alien has arrived. It was prepared to grant summary judgment to the INS on this basis alone, but it addressed the parties' arguments nonetheless, in part to comment on the BIA's "questionable interpretations of the relevant regulations." *Id.* at 411.

The BIA had held in its adjudications that, where a regulation purported to nullify the visa requirement in the event of waiver, such as by stating that the alien "is not required to present a visa if in his particular case a waiver of the visa requirement is granted," the Penalty Statute did not apply. *Matter of Plane CCA "CUT-532"*, 6 I. & N. Dec. 262, 264 (BIA 1954). The BIA had reached this conclusion based on the Penalty Statute's restriction of its application to those cases

where a visa was required.[4] The district court found this reasoning wholly unpersuasive, as it believed that even in these "nullification" instances, a visa was "required" for purposes of considering a particular case under the Penalty Statute. Otherwise, asked the court rhetorically, "why was it necessary for those documents to be waived?" *United Airlines*, 337 F. Supp. 2d at 412.

Considering the text of the Penalty Statute, the court noted that the statute applied if a visa was required under the Act or implementing regulations. The Act expressly requires non-immigrants to be in possession of a "valid nonimmigrant visa," 8 U.S.C. § 1182(a)(7)(B)(i)(II), further providing that the visa requirement "may be waived . . . on the basis of unforeseen emergency in individual cases," *id.* § 1182(d)(4)(A). The district court found these statutory provisions "unambiguous." *United Airlines*, 337 F. Supp. 2d at 411. The court held that the BIA had misinterpreted the phrase "or the regulations issued thereunder" in the Penalty Statute in a manner that was "plainly inconsistent with the intent of Congress." *Id.* The "unambiguous" Penalty Statute established the liability of an airline "at the moment" it brings an undocumented alien to the United States. *Id.* at 413. Such a reading, the court declared, "advances the recognized intent of Congress in enacting it." *Id.* The court applied the statutory and regulatory scheme temporally, to wit: the airline violates the Penalty Statute and becomes liable for the fine when it brings an undocumented alien to the United States, even though, at a later time, the INS might waive the visa requirement with respect to that individual alien.

---

[4] In contrast, the BIA had affirmed imposition of the fine where the relevant waiver regulation did not purport to nullify entirely the visa requirement for those individuals qualified for the waiver. Matter of Plane "CUT-604", 7 I. & N. Dec. 701, 702 (BIA 1958) (citing *Matter of Ss. "Florida"*, 6 I. & N. Dec. 85 (BIA 1954)).

According to the district court, the BIA's interpretation to the contrary "abort[ed] the intent of Congress as clearly reflected" in the statutory text. *Id.* at 414. It cited to the House Judiciary Committee report on the Immigration and Nationality Act ("INA") of 1952, in which the Committee stated that it had "substantially curtailed" the INS's authority to waive the visa requirement to "preclude the granting of blanket waivers of the documentary requirements on the ground of the existence of an emergency." *Id.* (quoting H.R. Rep. No. 82-1365, at 57, *as reprinted in* 1952 U.S.C.C.A.N. 1653, 1706-07) (emphasis omitted). Furthermore, reasoned the court, waiving the visa requirement is meant to benefit only the alien, not the airline. Drawing on case law, it found its conclusion strengthened by *Hamburg-American Line v. United States*, 291 U.S. 420 (1934), and *Peninsular & Occidental Steamship Co. v. United States*, 242 F.2d 639 (5th Cir. 1957). In *Hamburg*, the Supreme Court—interpreting the Penalty Statute's predecessor—had held that a carrier's liability remained unaffected by any subsequent discretionary admission of the alien. 291 U.S. at 426. In *Peninsular & Occidental*, the Fifth Circuit held that the grant of a waiver to an alien otherwise within the class of aliens who must have a passport and visa to enter the United States did not negate the carrier's liability for bringing the alien to the United States without such documents. 242 F.2d at 641-42.

The district court found further support in the third clause of the Penalty Statute, which states that the fine

> shall not be remitted or refunded, unless it appears to the satisfaction of the Attorney General that such person . . . prior to the departure of the vessel or aircraft from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a valid passport or visa was required.

8 U.S.C. § 1323(c). The court noted that the term "remit" means "to refrain from exacting a

8

payment," and it determined that "a fine is either forgiven or refunded only if the carrier, prior to departure, could not ascertain with reasonable diligence that the alien it was transporting required a visa or a passport." *United Airlines*, 337 F. Supp. 2d at 417.

On the question of whether it should defer to the BIA's interpretation of the statute under *Chevron*, the district court concluded that "[i]t is beyond cavil that the 'intent of Congress is clear' and that should be the end of the matter." *Id.* at 418. "[T]he construction placed upon the assorted Regulations by the Board of Immigration Appeals has been clearly contrary to [Congress's] intent [and] must be, and hereby [is], rejected." *Id.*

After noting that it had considered all of United's other arguments and found them to be without merit, the district court ruled in favor of the INS, upholding the fine assessed against United for the transportation of an improperly documented Mongolian citizen. *Id.* at 419.

**B.** ***Air India*: Lawful Permanent Residents**

*1.     The 2002 Decision*

Air India ("AI") challenged the INS's imposition of a fine for bringing a lawful permanent resident ("LPR") to the United States without the required reentry permit or visa. In 1993, AI transported from India to the United States an LPR who did not have the required documentation. Under the relevant regulation, which allows INS officers to waive the visa requirement if the alien shows good cause for doing so, 8 C.F.R. § 211.1(b)(3), INS officers waived the requirement and allowed the LPR to enter the United States. The INS nonetheless fined AI for violating the Penalty Statute. AI argues that "it should not be fined, due to the fact that [the LPR] was granted a waiver of the documentary requirement."

9

Contrary to its later approach in *United Airlines*, in recounting the history of the statutory and regulatory framework governing visa waivers for LPRs, the district court wrote approvingly of the BIA's longstanding rule that when the relevant waiver regulation nullified the visa requirement, the Penalty Statute did not apply. The district court observed that the BIA's approach "gave effect to the plain meaning of the statute and the Regulation." *Air India v. Brien*, No. 00-CV-1707, slip op. at 6 (E.D.N.Y. Feb. 14, 2002). It explained that the BIA had consistently followed this approach through 1966—applying the Penalty Statute or not, depending on whether the waiver regulation stated that aliens granted a waiver were not required to present a visa.

In 1966, this "good-cause waiver" was amended to state that an LPR who satisfied the district director "that there is good cause for his failure to present an immigration visa . . . may . . . be granted a waiver of that requirement."[5] *Id.* at 6-7 (citing 31 Fed. Reg. 13387 (Oct. 15, 1966)). According to AI, between 1966 and 1988 the INS did not fine airlines pursuant to the Penalty Statute in those cases where it granted a waiver. AI believed that the INS had "radically changed" its enforcement practices, however, when it created a National Fines Office in 1988 and allegedly began fining airlines even when it waived the visa requirement for good cause. *Id.* at 7.

Before the National Fines Office and the BIA, AI argued that the regulations required an LPR to present a visa except when the LPR was able to show good cause, and that the LPR it had brought to the United States, who had shown good cause and received a waiver, was therefore not required to present a visa. *See id.* at 8. That is, because the LPR was ultimately not required

_____

[5] The current regulation is substantially similar to the 1966 version.

10

to present a visa, the Penalty Statute did not apply. Before the BIA had issued a decision, however, AI (along with eleven other airlines) filed the 1995 lawsuit. *Id.* at 9. After this Court dismissed the 1995 lawsuit as unripe, *see Air España v. Brien*, 165 F.3d 148, 151-53 (2d. Cir. 1998), AI appeared again before the BIA. At that point, for the first time, it challenged the 1966 regulation as having violated the APA. *Air India*, No. 00-CV-1707, slip op. at 12. The BIA found the 1966 regulation valid and affirmed the imposition of the fine, interpreting the regulation as not exempting aliens from visa requirements, even if they were granted post-arrival waivers. *Id.* at 13. Once again before the district court, AI argued that (1) the fines were invalid because LPRs granted a waiver were exempt from the visa requirement, and (2) a 1998 amendment to the visa regulation was invalid. *Id.* at 14.

The district court began by commenting that if it "were to consider only the text of the [1966] Regulation, there could be little doubt that the fines imposed by the INS were proper." *Id.* at 16. It agreed with the INS that nothing in the 1966 regulation exempted aliens later granted waivers from the visa requirement, and it found unpersuasive AI's argument that a 1997 revision of the regulation reflected a preexisting understanding that the regulation did so. Thus, "if the [district court] were to consider only the plain language of the INA and the Regulation, the fines would appear to have been properly levied." *Id.* at 21-22.

The court noted, however, that it was "not constrained to consider only the *terms* of the INA and the Regulation." *Id.* at 22. If the 1966 regulation had not been properly promulgated under the APA, it observed, it could not be enforced. In that event, the 1957 version of the regulation would remain effective, and the 1957 version did exempt from the visa requirement any alien granted a good-cause waiver. *Id.* The parties agreed that the 1966 regulation had not

11

been subject to a notice-and-comment process, and the Attorney General had explained the decision not to conduct notice and comment because the amendment was meant to benefit the "persons affected thereby." *Id.* at 23 (internal quotation marks omitted). The district court found itself at a loss to understand how the agency could have thought that the 1966 amendment, which removed the exemption, benefitted LPRs. *Id.* Furthermore, the regulation affected airlines, and they did not "benefit" from it. *Id.* at 24.

The district court concluded, therefore, that the Attorney General did not have authority to promulgate the 1966 regulation without notice and comment. It dismissed the INS's argument that the agency had invoked the "good cause" exception to the notice-and-comment requirement, noting that the government had made no showing that compliance with the requirement was impractical or unnecessary in that case. *Id.* at 26 n.21. Because the agency had not complied with the APA, the 1966 regulation was void, and the district court applied the 1957 regulation instead. *See id.* at 27. Under the BIA's longstanding interpretation of that regulation, airlines were not subject to fines when an LPR was granted a waiver of the visa requirement.

Finally, turning to AI's challenge to the 1998 regulation, the district court dismissed the challenge as unripe. *Id.* The 1998 regulation had not been enforced against AI, and the INS had indicated that it had no plans to enforce it in the future. *Id.* at 29.

2.      *The 2003 Reconsideration Decision*

After the district court granted judgment to AI, the INS moved for reconsideration under Rule 59. For the first time, the INS argued that AI's challenge to the validity of the 1966 regulation was time-barred because it had not been brought within six years of the promulgation of the regulation.

The district court acknowledged that the federal statute of limitations for claims against the government is six years, and it described the defense as unwaivable because "compliance with the statute is a jurisdictional predicate for the court's ability to entertain the claim." *Air India v. Brien*, 261 F. Supp. 2d 134, 137 (E.D.N.Y. 2003). The district court cited several Courts of Appeals decisions addressing the same question that all found that claims based on procedural defects in the promulgation of a regulation accrue when the regulation is published in the Federal Register. *See, e.g.*, *Dunn-McCampbell Royalty v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Commonwealth of Penn. Dep't of Welfare v. U.S. Dep't of HHS*, 101 F.3d 939, 947 (3d Cir. 1996). Here, the regulation was published in 1966, and the period of limitations governing challenges to the regulation expired long before AI brought its claim. Because compliance with the six-year statute of limitations was jurisdictional, the district court found it appropriate to grant the INS's motion for reconsideration notwithstanding its failure to raise the defense at summary judgment.

Rejection of AI's procedural challenge to the 1966 regulation did not, however, dispose of AI's substantive challenge. The district court noted that it had already considered and rejected several of AI's claims regarding the meaning of the 1966 regulation, but it had not "consider[ed] [AI's] claim that imposition of fines under the regulation was improper in that it violated the stated intent of the Attorney General in promulgating the amendment." *Id.* at 139. The 1966 regulation was accompanied by a statement that the regulation was not subject to notice and comment because it "confers benefits on persons affected thereby." *Id.* (internal quotation marks omitted). The district court determined that "[t]his clear expression of intent refutes the argument that the regulation was intended to impose liability on the airlines when none had

13

existed under the prior version of the regulation as amended in 1957." *Id.* Moreover, the INS

had not imposed fines under the 1966 regulation for 22 years, and the agency could not explain

why it began imposing fines in 1988. To the extent that any evidence of the INS's intent existed,

it was in the form of an internal memorandum directing staff to begin enforcing the 1966

amendment against airlines and explaining that the agency was shifting policy to maximize

revenues. Such motivation, found the court, was not a "proper basis" for a change in

enforcement policy. *Id.* at 140. The district court therefore concluded that "the INS's decision to

begin fining air carriers some twenty-two years after the 1966 regulation was promulgated was

arbitrary, capricious and an abuse of discretion, and the fines imposed thereunder must still be

vacated." *Id.*

Finally, because the period of limitations for challenging regulations begins accruing at

the time of publication in the Federal Register, the district court reversed its earlier finding that

AI's challenge to the 1998 regulation was unripe, at least insofar as AI was challenging the 1998

regulation on procedural grounds for lack of a notice-and-comment period. The district court

determined that the 1998 regulation was not merely interpretive, as even if it were designed to

correct a technical error in the 1997 amendment of the regulation, "its correction plainly altered

the substantive rights of those affected by it." *Id.* at 141. In response to the INS's invocation of

the good-cause exception,[6] the district court found that the INS had failed to show any good

cause existed to dispose of the notice-and-comment requirement. Because no exception applied

---

[6] The INS invoked the "good cause" exception, found in 5 U.S.C. § 553(d)(3), which excludes a substantive rule from "required publication or service . . . as otherwise provided by the agency for good cause found and published with the rule."

and the 1998 regulation had therefore been issued in violation of the APA, the district court declared it void.

The INS filed a notice of appeal, but the parties later stipulated to dismissal of the appeal and AI's cross-appeal.

### 3. *The 2006 Rule 60 Decision*

Following its March 2003 decision in the *Air India* case, the district court issued its opinion in the *United Airlines* case. As explained *supra*, in its September 2004 *United Airlines* decision the district court held that airlines incur liability for a fine under the Penalty Statute upon bringing an undocumented alien to the United States, notwithstanding any subsequent waiver or parole and regardless of the precise language used in the visa requirement implementing regulations. In so ruling, the court found the BIA's interpretation of the statutes and regulations flawed. As a result of the *United Airlines* decision, the INS moved on December 1, 2004, pursuant to Federal Rule of Civil Procedure 60(b)(6) for relief from the March 2003 *Air India* decision.

The district court noted that the INS motion potentially implicated two provisions of Rule 60. The first, Rule 60(b)(1), allows for relief based on mistake, inadvertence, surprise, or excusable neglect, and it requires that the movant file the motion within one year of the judgment. The second, Rule 60(b)(6), allows for relief based on any other reason justifying relief, and it imposes no time limit on the motion. AI argued that the INS's motion was properly characterized as a Rule 60(b)(1) motion and that it was therefore untimely, not having been brought within one year of the March 2003 judgment.

The district court found that because the parties had not made arguments related to the Penalty Statute, it had not "erred" in focusing only on the regulations thereunder; the INS was therefore not seeking relief based on "judicial error" under Rule 60(b)(1). *Air India, Ltd. v. Brien*, 239 F.R.D. 306, 313-14 (E.D.N.Y. 2006). It further found that even if some of the INS's arguments were related to judicial error, the INS had also made claims that "properly fall under a Rule 60(b)(6) motion." *Id.* at 314. For example, the INS asserted that "the conflicting opinions issued by [the district court] have created confusion in the law" and would make it more difficult for the INS to enforce immigration laws. *Id.* The court agreed with the INS that the judgment had the potential for creating extreme hardship and that "the interest of justice require[d] reconsideration" of the March 2003 order. *Id.* It therefore found that the motion was properly brought under Rule 60(b)(6) (and was thus timely).

On the merits, the district court found that its September 2004 *United Airlines* decision "render[ed] the March 13 [*Air India* decision] moot." *Id.* at 315. The court reasoned that because it had found that the Penalty Statute did not allow for a "blanket waiver of fines" in those instances where an alien was granted a waiver of the visa requirement, any regulations purporting to effect such a waiver were "void." *Id.* The court recognized that its focus in *Air India* on the Attorney General's intent in promulgating the 1966 regulation "missed the point," because regardless of the Attorney General's intent, the regulation could not be construed "as prohibiting the INS from imposing fines on carriers who bring to the United States aliens without the required documentation, even if those aliens are subsequently paroled or receive a waiver," as such a construction would violate the Penalty Statute. *Id.*

The court concluded that the inconsistency between the *Air India* and *United Airlines* decisions, as well as the substantial overlap in parties between the two lawsuits and the effect the inconsistency would have on the government's ability to "control its borders . . . constitute[d] the 'extraordinary circumstances' necessary to invoke relief under [Rule] 60(b)(6)." *Id.* at 316. It therefore granted the INS's motion for relief from the March 2003 judgment.

The government requested an order that explicitly laid out the result of the district court's *Air India* decision and in that order, issued in January 2007, the district court clarified that in granting the INS's Rule 60 motion for relief from judgment, it had "implicitly grant[ed] the government's underlying motion for summary judgment and deni[ed] the airlines' underlying cross-motion for summary judgment." *Air India, Ltd. v. Brien*, No. 00-CV-1707, slip op. at 4 (Jan. 25, 2007).

## C.     *Finnair***:  The Post-1996 Tourist Regulation**

Finnair challenged the INS's 1996 amendment of the regulation governing visa waivers for tourists who were able to show "an unforeseen emergency."  Prior to 1996, the relevant regulation stated that "[a] visa and a passport are not required of a nonimmigrant" who could show an emergency.  8 C.F.R. § 212.1(g) (1995).  The  regulation, which formed the basis of United's defense in its separate lawsuit, had been interpreted as not permitting the INS to impose a fine when the alien was later granted a waiver.  The pre-1996 version of the regulation was consistent with a parallel State Department regulation, 22 C.F.R. § 41.2(j), which included a similar statement.  In 1996, the INS amended the regulation to state that "[a] nonimmigrant seeking admission to the United States must present an unexpired visa" and that the district director could waive that requirement if the nonimmigrant showed an emergency.  8 C.F.R. §

17

212.1(g) (1997). This language modified the regulation so that the visa requirement was preserved even when the alien later received a waiver. The State Department did not amend its own parallel regulation to reflect these changes until 1999, and it did not seek notice and comment in connection with that amendment.

Finnair was fined under the regulatory scheme in effect between 1996 and 1999. It argued that the INS's 1996 amendment was void because it was not jointly promulgated with the State Department, as required by statute. Finnair further claimed that the 1996 INS version conflicted with the pre-1999 parallel State Department regulation. The BIA upheld the fine, finding that the 1996 amendment satisfied the joint action requirement because the State Department had delegated its rulemaking authority with respect to tourist visa waivers to the Attorney General. The BIA further held that if the INS regulation conflicted with the State Department regulation, the INS regulation controlled.

Without delving into the BIA's reasoning, the district court granted summary judgment to the INS on December 27, 2006, based upon its *United Airlines* decision. *See Finnair OY v. Brien*, No. 02-CV-0900, slip op. at 1 (E.D.N.Y. Dec. 27, 2006).

## II. DISCUSSION

A.      *United Airlines*

The *United Airlines* case presents two questions: (1) whether the district court erred when it ruled that the Penalty Statute unambiguously imposes a fine on a carrier transporting an undocumented alien, notwithstanding any subsequent receipt of a visa waiver by that alien and regardless of the language of any applicable regulation; and (2) whether the INS acted arbitrarily

when it paroled aliens into the United States rather than granting them a visa waiver, thereby preserving its ability to fine the carrier for having brought the aliens to the United States.

### 1. *Validity of the BIA Rule*

The first issue concerns the validity of the BIA's longstanding rule, originating through its own adjudications, that when (1) a visa waiver regulation states that an alien is not required to present a visa when they receive a post-arrival visa waiver, and (2) an alien receives a waiver pursuant to that regulation, the carrier may not be fined under the Penalty Statute, 8 U.S.C. § 1323(a)-(b), for having brought the alien to the United States (the "BIA Rule"). It was this BIA Rule that the district court invalidated, as inconsistent with the Penalty Statute, in *United Airlines*, and it was on the basis of *United Airlines* that the district court reversed itself in *Air India* and also decided *Finnair*. Our decision, therefore, as to the validity of this BIA Rule will determine our approach to all three cases.

To recap, the district court held that any regulation (or interpretation thereof) exempting an alien from the visa requirement, thus exempting the airline from the Penalty Statute based on a post-arrival waiver, is inconsistent with the Penalty Statute and Congress's intent in enacting it. On appeal, the airlines challenge this holding. They distinguish *Hamburg*, relied on by the district court, in which the Supreme Court held that a discretionary admission of an alien lacking the required documentation has no effect on the fine to be imposed on a carrier, *see* 291 U.S. at 426, by arguing that the admissions here were not discretionary. The airlines believe that the aliens in these cases were "entitled" to admission because they satisfied the statutory requisites (i.e., a showing of good cause or an unforeseen emergency), and they claim that because the aliens were entitled to admission, the Penalty Statute does not apply.

19

The airlines further argue that the district court misread Congress's intent. They assert that the district court's interpretation of the statutory scheme would force airlines to risk a fine when they transport aliens "who comply with the regulation [exempting them] from the visa requirement." They contend that the BIA decisions interpreting the regulations and the statute in a way that comports with the airlines' position should be respected because those decisions "are wholly consistent with *Hamburg* and the 1952 statutory and regulatory scheme." Finally, the airlines argue that Congress's inaction in the face of the BIA's interpretation of the regulations and statutes involved here reflects its acquiescence in that interpretation.

The INS on the other hand asserts the propriety of the district court's reliance on *Hamburg-American Line v. United States*, 291 U.S. 420 (1934), and *Peninsular & Occidental Steamship Co.*, 242 F.2d 639 (5th Cir. 1957), in support of its interpretation of Congress's intent. That is, Congress, through the Penalty Statute, 8 U.S.C. § 1323, intended that a fine be levied against a carrier for bringing to the United States an alien who did not possess the proper documentation, regardless of whether or not a post-arrival waiver was issued.

We conclude that the district court erred when it invalidated the BIA Rule. We also conclude that the district court should have deferred to the agency's interpretation of the Penalty Statute.

### a. Ambiguity of the Penalty Statute

The district court's first error was finding that the Penalty Statute unambiguously imposes liability on a carrier at the moment the carrier transports an undocumented alien, notwithstanding any subsequent waiver.

The initial step in determining whether a statute is ambiguous is to begin with the statute's text. *Carcieri v. Salazar*, 129 S. Ct. 1058, 1063 (2009); *see also Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 98 (2d Cir. 2009) ("As always, we begin with the text of the statute."). The district court, to find the statute unambiguous, relied instead on Supreme Court and Fifth Circuit case law, four words in a 1966 amendment to the relevant regulation, and the Penalty Statute's restricting of refunds to those instances where the carrier exercised due diligence. None of these sources render the Penalty Statute unambiguous.

The court cited *Hamburg* for the proposition that liability for the fine obtains upon the transportation of the alien into the United States, notwithstanding any subsequent discretionary relief. But *Hamburg* does not control in this case. In *Hamburg*, the Supreme Court held that a carrier was liable for a fine despite the alien's later receipt of a discretionary admission by the Secretary of Labor. 291 U.S. at 425-26. The Court found that the penalty statute applicable at the time "preserve[d] the fine against any discretionary admission." *Id.* at 426. The problem in applying *Hamburg*'s analysis to this case is that the penalty statute then in effect categorically prohibited carriers from bringing an alien who had no visa to the United States. *Id.* at 421 n.1. As the Supreme Court concluded, the Penalty Statute applicable to carriers in 1934 "ma[de] it clear that the occasion for the fine is the bringing in of the alien without an unexpired visa." *Id.* at 425.

The Penalty Statute at issue in these cases, however, restricts its prohibition to those instances where "a visa was required under this chapter or regulations issued thereunder." 8 U.S.C. § 1323(a)(1). Certain "regulations issued thereunder," moreover, expressly state that certain classes of aliens are not "required" to present a visa. *See, e.g.*, 8 C.F.R. § 212.1(g). The

21

textual differences between the current Penalty Statute and the one at issue in *Hamburg* are precisely the crux of the interpretive dilemma that we must address.

Reliance on the Fifth Circuit's *Peninsular & Occidental* decision is similarly misplaced. In the decision, a steamship company challenged the fine incurred under § 273 of the Immigration and Nationality Act of 1952 for bringing into the United States four aliens that did not possess valid visas. 242 F.2d 639, 640 (5th Cir. 1957). In its decision, the court referenced broad language regarding Congress's intent "to compel carriers, under the pain of penalties which increase vigilance, to police enforcement of and compliance with many parts of the immigration laws." *Id.* at 641. There was no regulation in place at the time, however, that removed the visa requirement from an alien who was granted a post-arrival waiver. *See* 8 C.F.R. § 212.1(g) (1995). Instead, *Peninsular & Occidental* was interpreting the 1952 Penalty Statute directly. 242 F.2d at 641. The Fifth Circuit had no occasion to consider the effect of a regulation exempting aliens from the visa requirement when it upheld the fine on the carrier.

These cases, relied upon by both the district court and the INS in its arguments to us, do not answer the question here, which is whether imposing the fine provided for in the Penalty Statute is consistent with regulations exempting certain groups of aliens from the visa requirement based on a post-arrival waiver. When considered in relation to that question, the statutory language - "if a visa was required under this chapter or regulations issued thereof" - is ambiguous. Once a statute is determined to be ambiguous, the court must look to the agency interpretation of the statutory provision, to consider the level of deference due the agency's interpretation of the Penalty Statute. *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 (2d Cir. 2004) ("If we decide that we are to defer, we must then decide the appropriate level

of deference."); *see also Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004) ("[D]eference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."); *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir. 2000) ("[W]here the relevant statutory provision is silent or ambiguous, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'" (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 843-44 (1984))).

> b. The Level of Deference Due to the Agency's Interpretation of the Penalty Statute

Once we determine that a statute is ambiguous, we then consider the level of deference warranted by an agency's interpretation of the statute. *Kruse*, 383 F.3d at 55.

The BIA Rule warrants *Chevron* deference. The BIA interprets the Penalty Statute to mean that the issuance of certain post-arrival waivers—specifically, those which explicitly provide that a visa is "not required" if the waiver is issued, *see, e.g.*, 8 C.F.R. § 212.1(g) (1995)—results in the carrier avoiding a basis for being fined. This interpretation of the Penalty Statute by the BIA, while not evolved through a traditional notice-and-comment period, is still worthy of our deference. *See Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 317 n.4 (2d Cir. 2007) (en banc) (Katzmann, *J.*, concurring) ("[T]he BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." (internal quotation marks omitted)). To the extent the BIA Rule includes an interpretation of a regulation, similar deference is warranted. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)).

Applying *Chevron* deference, we conclude that the BIA Rule is reasonable. The BIA Rule conditions the application of the Penalty Statute on whether the regulations entirely exempt from visa requirements the transported aliens who are in receipt of a waiver. This interpretation, while not compelled by the statutory and regulatory scheme, is certainly plausible and rational: the Penalty Statute provides for the imposition of a fine if a visa were "required" pursuant to regulations, and the regulations at issue in turn provide that a visa is "not required" if a waiver were granted.

Moreover, we note that neither party disputes that the BIA has for decades interpreted the Penalty Statute and corresponding INS regulations to exempt carriers from liability when the alien is granted certain post-arrival waivers. The BIA's consistency in applying the BIA Rule has particular force because it is "a contemporaneous construction of a statute by the [individuals] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." *Aluminum Co. of Am. v. Cent. Lincoln Peoples' Util. Dist.*, 467 U.S. 380, 390 (1984) (internal quotation marks omitted). It might therefore "carry the day against doubts that might exist from a reading of the bare words of a statute." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 414 (1993) (internal quotation marks omitted).

Indeed, Congress's repeated amendment of the relevant provisions of the statute "without expressing any disapproval" reinforces the strength of the BIA's interpretation, because it "is persuasive evidence that the [Agency's] interpretation is the one intended by Congress." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (internal quotation marks omitted); *Coke v. Long Island Care at Home, Ltd.*, 376 F.3d 118, 130 (2d Cir. 2004), *rev'd*

24

*on other grounds*, 551 U.S. 158 (2007). Since 1952, Congress has amended the section containing the statutory waiver provisions for non-immigrants, 8 U.S.C. § 1182, at least four times (in 1965, 1976, 1980, and 1990). Congress has also amended the Penalty Statute four times, and none of those amendments modified the language at issue in this case.

The difficulty with the BIA rule concerns the counterintuitive analysis by which a post-arrival determination by an INS officer to grant a waiver may retroactively modify the alien's pre-arrival need to present a visa. This, however, does not lessen the reasonableness of the BIA's interpretation of the Penalty Statute. Retroactivity is not particularly unusual in regulatory law nor in the immigration context. *See Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998) ("So long as a change in a regulation does not announce a new rule, but rather merely clarifies or codifies an existing policy, that regulation can apply retroactively."). If the INS finds that application of the BIA Rule creates a disincentive for airlines to make a reasonable, good faith effort to ensure that every alien has a visa prior to arrival in the United States, it may amend the regulations so that a post-arrival waiver does not nullify the visa requirement.

In sum, we conclude that the language of the Penalty Statute is ambiguous, and the agency's interpretation of the statute is reasonable. Accordingly, we defer to the agency's interpretation under *Chevron* and uphold the BIA Rule.

*2.     Reasonableness of the BIA's paroling of aliens*

Because we uphold the BIA Rule, we must next address whether the agency acted unreasonably in paroling aliens into this country—instead of granting them a post-arrival waiver—in order to preserve its ability to fine the airlines. The district court found that the INS

had acted within its authority in paroling aliens rather than waiving the visa requirement. We agree.

As an initial matter, the airlines have presented no support for their claim that, in these cases, the INS first determined that the aliens were eligible for a waiver, and only then granted parole rather than a waiver. Though United points to its Rule 56.1 statement for support, its Rule 56.1 statement asserts only that when the aliens in question arrived in the United States, each "gave an explanation for the absence of a visa or a passport" of the sort usually accepted by the agency, but that each was granted parole rather than a waiver despite having presented such an explanation. The Rule 56.1 statement did not assert that the INS district director was "satisfied" that the alien's explanation constituted an emergency, 8 C.F.R. § 212.1(g), and the INS has not conceded that the agency first found the aliens eligible for a waiver and only then granted parole instead.

The real question, therefore, is whether the INS abused its authority in employing its parole power rather than its waiver power so as to preserve its ability to fine the airlines. The airlines contend that the agency had an improper motive for its change in policy. We disagree. A 1994 policy directive stated that the agency's goal was to "maximize revenues and create a deterrent against violations." Memorandum from George Wetteland, Acting APD, Immigration & Naturalization Serv., *Change in Policy Regarding Carrier Fines when a Visa Waiver is Granted on Form I-193* (Aug. 24, 1994). Congress had recently given the INS power to retain the monies collected from fines, 8 U.S.C. § 1356*; see also* INS Fines Training Program, J.A. 105 (detailing INS policy on collecting fines under § 273), most assuredly knowing that the financial stake would influence the manner which the INS exercised its enforcement discretion. The

resulting INS policy change of paroling aliens, versus granting waivers, is thus not an improper motive. However repugnant the idea of financial drivers may be to United, there is no authority for United's claim that such motives are improper or contrary to Congress's intent.

United also argues that the INS's shift in its enforcement policy was a legislative act that required notice to carriers under the APA "that the very same aliens it had been transporting since 1958 would no longer be admitted but paroled," but that claim is also meritless. Unless a statute constrains an agency's exercise of its enforcement powers, the agency possesses broad discretion in how it enforces statutory and regulatory law. *See Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1033 (D.C. Cir. 2007) (holding that, because the statute did not "give any indication that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another" and "provide[d] no meaningful guidelines defining the limits of [the agency's] discretion," the challenger had failed to rebut the presumption that the enforcement decision was "committed to the discretion of the agency"); *cf. Heckler v. Chaney*, 470 U.S. 821, 834-35 (1985) ("If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under [the APA], and courts may require that the agency follow that law; if it has not, then an agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of [the APA].").

Here, when making parole decisions, the INS exercises a "broad discretionary power" pursuant to "[t]he unusually broad Congressional power over the admission of aliens into the United States." *Bertrand v. Sava*, 684 F.2d 204, 212 (2d Cir. 1982). Those decisions "must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to

the contrary," a showing that poses a "heavy [burden]" for any alien challenging a parole decision. *Id.* at 212-13. Similarly, the waiver statute states only that the visa requirement "*may be waived*" on the basis of an unforeseen emergency. 8 U.S.C. § 1182(d)(4)(A) (emphasis added). It does not require a waiver or otherwise restrict the executive's exercise of its enforcement discretion.

With respect to *United Airlines*, therefore, we reverse the district court's ruling declaring the BIA Rule invalid, but we affirm the district court's judgment in favor of the INS on the grounds that the agency permissibly chose from among the various enforcement mechanisms available to it when it paroled aliens into this country rather than granted them visa waivers.

**B.** *Air India*

The *Air India* case likewise presents two distinct questions. The first is whether the district court made a procedural error when it granted the INS's Rule 60(b) motion, because (a) the motion was untimely, or (b) the INS had not shown the type of extraordinary circumstances warranting such relief. The second question is whether the district court erred when it granted the motion, in particular (a) when it decided that the INS's post-1988 enforcement of the 1966 lawful permanent resident ("LPR") visa waiver regulation was arbitrary, and (b) when it decided that the INS's 1998 amendment of the LPR visa waiver regulation was valid notwithstanding that it was promulgated without notice-and-comment. We review the district court's Rule 60 decision for abuse of discretion. *Gey Assocs. Gen. P'ship v. 310 Assocs.* (*In re 310 Assocs.*), 346 F.3d 31, 34 (2d Cir. 2003) (per curiam). Because we find that the district court committed procedural error in granting the Rule 60(b) motion, we do not reach the second, substantive,

28

question, as the government previously dismissed its appeal of the district court's underlying 2003 decision.

        *1.       Proper characterization of the Rule 60 motion*

The airlines' first challenge to the Rule 60 motion is that it was untimely, arguing that it was actually a Rule 60(b)(1) motion, which must be brought within one year of the judgment. The INS contends that the motion was properly brought under Rule 60(b)(6), and therefore was not subject to the one-year limit.

Rule 60(b)(1) allows for relief from judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) is "available for a district court to correct legal errors by the court." *In re 310 Assocs.*, 346 F.3d at 35; *see also Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839 (11th Cir. 1982) (per curiam) ("The 'mistakes' of judges may be remedied under this provision."). Rule 60(b)(6), on the other hand, allows for relief from judgment based on "'any other reason justifying relief.'" *Smith v. Sec'y of HHS*, 776 F.2d 1330, 1333 (6th Cir. 1985) (quoting Fed. R. Civ. P. 60(b)(6)) ("[A] Rule 60(b)(6) motion must be based upon some reason other than those stated in clauses (1)-(5)." (internal quotation marks omitted)). The two provisions are exclusive and "an appellant cannot circumvent the one-year limitation [of Rule 60(b)(1)] by invoking the residual clause (6) of Rule 60(b)." *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) (per curiam); *see also Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000).

Courts of Appeals do not appear to have addressed the precise situation presented here: the district court's issuance of conflicting decisions in two separate lawsuits with substantial overlap in parties and substantial similarity in subject matter. The district court found that the

motion was properly brought under Rule 60(b)(6) because (1) the parties' failure to challenge the BIA Rule meant that the court's failure to address that issue was not "judicial error," and (2) the INS had also made claims that "properly [fell] under a Rule 60(b)(6) motion," such as its claim that the inconsistency in the decisions would make border enforcement more difficult for the government. *Air India, Ltd.*, 239 F.R.D. at 313-14. Indeed, the Fifth Circuit has suggested that inconsistency claims, where meritorious, are properly brought under Rule 60(b)(6). *See Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 748 n.6 (5th Cir. 1995) (noting that "a change in decisional law" might sometimes constitute "an extraordinary circumstance" under Rule 60(b)(6), such as in the habeas context or "where two cases arising out of the same transaction result in conflicting judgments").

We find that the motion was timely filed under Rule 60(b)(6) to the extent that it was based on the potential hardship resulting from inconsistent judgments. Such a claim is not easily categorized as "mistake" or "inadvertence" under Rule 60(b)(1), and it should therefore be allowed to proceed under Rule 60(b)(6).

2. *Whether the Motion was Properly Granted*

The second question is whether the Rule 60 motion raised issues sufficiently extraordinary to justify relief. Before the district court, the INS argued for relief on three grounds: (1) the district court's initial decision had been incorrect; (2) the district court's initial decision prevented the INS from fining airlines; and (3) the conflict between *Air India* and *United Airlines* created confusion in the law, thereby making border enforcement more difficult. The INS claimed that the interest in finality did not outweigh these considerations, as the *Air*

30

*India* and *United Airlines* cases were part of "an interconnected trilogy of cases" that had all once been part of the same case.

Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (internal quotation marks omitted). Relief is warranted "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (internal citations and quotation marks omitted). We have warned, however, that a Rule 60 motion "may not be used as a substitute for appeal" and that a claim based on legal error alone is "inadequate." *Id.* at 107; *see also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004) ("[A] mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)."). In the Rule 60(b)(1) context, we have also noted that Rule 60 does "not allow district courts to indulge a party's discontent over the effects of its bargain," such as where the party has made a "deliberate, strategic choice to settle." *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) (internal quotation marks omitted).

We reverse the district court's grant of the INS's Rule 60(b)(6) motion on procedural grounds. The conflict between *Air India* and *United Airlines* was not, by itself, sufficiently "extraordinary" to justify reopening the judgment in *Air India*, especially given that such conflict resulting from a subsequent Circuit Court or Supreme Court decision would very likely not suffice to grant Rule 60(b)(6) relief. *See Batts*, 66 F.3d at 749 ("A circuit court's announcement of a new rule of federal law, like a Supreme Court pronouncement, is similarly insufficient without more to justify Rule 60(b)(6) relief."). Thus, if this Court had issued an opinion in

*United Airlines* on appeal, that opinion would likely not, by itself, provide a basis for revisiting the *Air India* decision. The INS's argument, which is based on mandatory authority from the Circuit but only on persuasive authority from the district court, therefore fails.

With respect to the INS's claim that the district court's initial decision prevents it from collecting fees and that the airlines accordingly are unjustly enriched, the proper remedy for that problem was direct appeal. The INS knowingly stipulated to dismissal of its appeal, and it thereby gave up any claim it had to the fees it lost as a result of the district court's decision. We should not allow it to use the Rule 60 motion "as a substitute for appeal," *Matarese*, 801 F.2d at 107, particularly given its "deliberate, strategic choice" to dismiss that appeal, *Andrulonis*, 26 F.3d at 1235 (internal quotation marks omitted).

The INS focuses most on the "extreme hardship" it claims would result from the district court's divergent decisions and the ensuing legal confusion. Whereas the *United Airlines* holding gave the INS virtually unfettered discretion to fine airlines regardless of whether the non-immigrant alien was granted a post-arrival waiver, *Air India* held that (1) the INS could not impose fines where the alien was granted a waiver pursuant to the 1966 LPR regulation, and (2) the 1998 regulation was void because the agency had not complied with the APA. For decades prior to the *United Airlines* decision, the INS enforced the Penalty Statute differently depending on whether the relevant visa waiver regulation nullified the visa requirement. In other words, the legal landscape facing the district court when it ruled on the Rule 60 motion—where the INS was able to impose fines in some circumstances but not others, depending on the regulation being enforced—was no different from the legal landscape that had existed for decades. The INS has shown itself quite capable of amending its regulations when it found this patchwork approach

unworkable, *see* 8 C.F.R. § 212.1 (listing amendments of the section in the Federal Register, currently numbering over 30), and it offers no explanation for why it cannot do so now. If the INS needs the 1998 regulation that was invalidated by the district court so that it can impose fines on airlines even when the alien receives a waiver, it may readopt the regulation after notice and comment. There is nothing "extreme" about the fact that the agency must respond to judicial decisions invalidating its regulations either by appealing these decisions or changing its regulations.

The agency's grounds for the Rule 60(b)(6) motion—which essentially boil down to a claim that the decision was wrong—are not sufficiently extraordinary to justify reopening a closed case in which the agency voluntarily stipulated to dismiss its appeal. This is especially so here where the two cases were related and any appeal of *Air India* could have been stayed and later consolidated with an appeal in *United Airlines*. We hold that the district court abused its discretion in granting the Rule 60(b)(6) motion. Accordingly, we reverse the Rule 60(b) motion on procedural grounds and decline to reach the merits of the district court's March 2003 *Air India* decision.

**C.     *Finnair***

In *Finnair*, we are presented with what appears to be a novel question of administrative law: the meaning of the "joint action requirement" giving the Attorney General and the Secretary of State joint authority over visa waivers.

*1.     Whether the 1996 INS Amendment Violated the Joint Action Requirement*

The airlines challenged a 1996 amendment to the tourist visa waiver regulation that preserved the visa requirement when the alien was granted an emergency waiver. The airlines

claimed that the 1996 amendment was void because it was promulgated by the INS alone and therefore did not comply with the joint action requirement. The district court granted summary judgment to the INS in *Finnair* based on its ruling in *United Airlines*, apparently believing that because *United Airlines* invalidated any agency rule exempting airlines from a fine in certain cases, the INS could fine airlines regardless of which regulation applied.

The visa waiver statute states that the visa requirement "may be waived by the Attorney General and the Secretary of State acting jointly . . . (A) on the basis of unforeseen emergency in individual cases." 8 U.S.C. § 1182(d)(4). Over the years, these two agencies have treated this statute as giving each of them joint authority over visa waivers. Prior to 1996, the State Department and the INS exercised this joint regulatory power by enacting parallel visa waiver regulations. The INS version stated that "[a] visa and a passport are not required of a nonimmigrant who . . . satisfies the district director" of the existence of an unforeseen emergency. 8 C.F.R. § 212.1(g) (1995). The State Department's version stated that "[a] visa and a passport are not required of an alien if . . . the responsible [INS officer] concludes that the alien is unable to present the [visa] because of an unforeseen emergency." 22 C.F.R. § 41.2(j) (1997).

In 1996, the INS alone enacted a new version of the regulation, which preserved the visa requirement when the alien was granted a waiver. The 1996 regulation required tourists to present a visa even if they received a post-arrival waiver, thus making the airlines subject to a fine under the BIA Rule for having brought the tourists to the United States.[7] The State

---

[7] Prior to the INS's unilateral amendment, 8 C.F.R. § 212.1(g) read, in relevant part:

> A visa and a passport are not required of a non-immigrant who . . . at the time of arrival at a port of entry in the United States, satisfies the district director . . . that, because of an unforeseen emergency, he or she is unable to present the required documents, in which case a waiver application shall be made on Form I-193.

Department did not issue a new parallel regulation to the same effect until 1999. In the interim, the INS fined airlines pursuant to its 1996 amendment. Finnair's central claim is that the INS amendment is void because it does not comply with a requirement that the INS and State Department "jointly" regulate in this area. Thus, the question we address here is whether the fines issued in the interim period between 1996 and 1999 are valid.

The INS makes two counterarguments. First, it claims that the State Department delegated its authority over visa waivers to the INS in 1991. Prior to 1991, before granting an emergency visa waiver an INS officer was required to "seek concurrence of the Department of State Visa Office." In 1991, to save "resources for both agencies and reduce the time it takes to admit certain nonimmigrant aliens," the two agencies amended their parallel regulations so that an INS officer would no longer need to seek the concurrence of the Department of State when granting a waiver. *See* Waiver of Certain Types of Visas, 56 Fed. Reg. 36,028 (July 30, 1991) (to be codified at 8 C.F.R. pt. 212). The INS now asserts that the 1991 amendment made the joint action requirement for promulgating and amending regulations meaningless in the context of visa waivers because it constituted a delegation of the authority of the Department of State over visa waivers to the INS.

---

8 C.F.R. § 212.1(g) (1995).

> The post-amendment regulation reads, again in relevant part:
>
> A non-immigrant seeking admission to the United States must present an unexpired visa and a passport . . . unless the nonimmigrant satisfies the requirements described in one or more of the paragraphs (a) through (f) or (i) of the section. Upon a nonimmigrant's application on Form I-193, a district director at a port of entry may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency.

8 C.F.R. § 212.1(g) (1997).

We find this argument unpersuasive. In the 1991 amendment, the State Department arguably delegated to INS *officers* its authority to *execute* the relevant visa waiver. It did not, however, delegate its authority to promulgate regulations regarding such waivers. Nothing about the 1991 amendment suggests that it did anything more than change the manner in which the visa waivers were granted. On the contrary, in the final rule, published in the Federal Register in 1994, the State Department specifically highlighted the limited authority it was conferring on INS:

> Furthermore, the Department wishes to clarify the <u>limited extent</u> of the authority delegated to the Immigration and Naturalization Service. Although the proposed rule permits the District Director to waive the documentary requirements of INA 212(a)(7)(B), the Department of State <u>will continue to exercise the authority</u> vested in the Secretary of State and the Attorney General under the provisions of INA 212(d)(4)(A) relating to the joint concurrence in documentary waivers, except in the circumstances described in § 41.2(j) of this final rule. Consequently, this final rule makes minor modifications to the text of the regulation as discussed in the preamble.

Visas: Documentation of Nonimmigrants Under the Immigration and Nationality Act; Waiver by Secretary of State and Attorney General of Passport and/or Visa Requirements for Certain Categories of Nonimmigrants, 59 Fed. Reg. 1473 (Jan. 11, 1994) (to be codified at 22 C.F.R. pt. 41) (emphasis added). The amendment gives no indication that it was meant to constitute a delegation by the State Department to the INS of the entirety of its regulatory authority over visa waivers; instead it limited the delegation of its authority to a case-by-case determination made by an officer at the point of entry. The State Department, furthermore, has done nothing to suggest that it agrees with the INS on this point. When the State Department amended its own visa waiver regulation in 1999, it exercised its authority in this area, and it made no reference to having "delegated" that authority to the INS. Without some evidence that a delegation of the sort

asserted by the INS was intended by the State Department, we are extremely wary of finding that such a delegation occurred.

Second, the INS claims that if the INS and State Department regulations in this area conflict, the INS regulation should control because the INS has primary authority over the administration of the visa waiver regulation. This argument is inconsistent with the joint action requirement expressly imposed by Congress. In effect, the INS is claiming that when it wishes, it is free to displace the State Department's authority entirely. The statute, however, requires joint action, and the two agencies acted jointly when enacting the pre-1996 version of the regulation. The INS's attempt to amend the jointly enacted regulation on its own, therefore, is ineffective, and the pre-1996 version remains in effect. The INS's failure to coordinate with the State Department in the amendment of the regulations renders the 1996 amendment void.

2.      *Whether the 1999 State Department Amendment was Valid*

We must also consider the validity of the State Department's 1999 amendment of its own visa waiver regulation, which made its regulation consistent with the INS's 1996 regulation. The State Department did not conduct a notice-and-comment period, and it did not act in concert with the INS. The INS claims that neither of these issues is fatal to the amendment because: (1) the State Department had delegated its authority in this area to them, its 1999 amendment was simply a confirmation of the INS's primary authority; and (2) the 1999 amendment was "technical" and therefore good cause existed to forgo notice and comment.

Neither of these rationales is persuasive. As discussed above, the State Department never delegated its regulatory authority—as distinguished from its primary enforcement authority. The 1999 State Department amendment, like the 1996 INS amendment, violated the joint action

requirement, and the prior versions of both agencies' regulations remain effective until the two agencies act *jointly* to amend them. The second argument fails because the 1999 amendment was not merely a technical change to existing valid regulations. This expansion of liability for the carriers cannot be viewed as being of little importance to the parties it affected; it is a great deal more than a technical change to the regulation. Because the 1999 amendment was not merely technical, it should have undergone notice and comment before being adopted.

## III. CONCLUSION

In *United Airlines v. Brien*, we REVERSE in part and AFFIRM in part. We REVERSE the district court's ruling insofar as the court found that the INS cannot, by regulation, nullify the visa requirement upon the grant of a post-arrival waiver, thereby precluding application of the Penalty Statute. We hold that the BIA Rule, exempting carriers from liability when an improperly documented or undocumented alien passenger receives a post-arrival waiver of the visa requirement, is consistent with the Penalty Statute. We AFFIRM the judgment of the district court and hold that the INS did not act arbitrarily when it opted to use its parole authority rather than its visa waiver authority to admit aliens into the United States. The INS is not required to provide waivers.

In *Air India v. Brien*, we REVERSE the district court's grant of relief under Rule 60(b)(6). We hold that the Rule 60(b) motion was timely filed as a Rule 60(b)(6) motion, but that it was nevertheless procedurally defective because the circumstances were not sufficiently extraordinary to merit relief. We decline to reach the question of whether the district court committed substantive error when it granted the Rule 60(b) motion.

In *Finnair v. Brien*, we REVERSE the district court's grant of summary judgment to the INS.  We hold that the 1996 amendment of the INS version of the tourist visa waiver regulation is invalid because it was promulgated in violation of the joint action requirement.  We likewise hold that the 1999 amendment of the State Department version of the tourist visa waiver regulation is invalid because it was promulgated: (1) in violation of the joint action requirement, and (2) without notice-and-comment.